STATE OF NEBRASKA, APPELLANT, V.
LEROY L. SUTTON, APPELLEE.

301 N.W.2d 335

Filed January 26, 1981. No. 43854.

Vincent Valentino, York County Attorney, for appellant.

Larry R. Baumann for appellee.

Heard before McCOWN, J.

McCOWN, J.

This is an appeal by the State pursuant to Neb. Rev. Stat. § 29-824 (Reissue 1979) from an order of the District Court for York County, Nebraska, suppressing a statement made by the defendant to a sergeant of the York police department. The statement was made in connection with a charge of burglary and another charge of unauthorized operation of a propelled vehicle.

The record shows that on June 3, 1980, at approximately 3 a.m., the defendant was arrested in York, Nebraska, and taken to the police station. Shortly after the defendant arrived at the police station, Sgt. Cobb gave him the *Miranda* warnings and told the defendant he wished to conduct an interview with him. The defendant refused to make a statement and requested an attorney. The defendant testified that while he was at the police station Sgt. Cobb pointed to some items of property and told the defendant that was the evidence he would use to charge the defendant's girl friend. Early on the morning of June 3 the defendant was taken to the sheriff's office and placed in a cell. He remained in jail until sometime in the late morning or early afternoon of June 4, 1980, when he was taken to the York County Court for bond setting.

At that time he again requested that counsel be appointed for him, and the county court entered an order appointing counsel for the defendant. The appointed counsel was not notified of the appointment until the next day.

The defendant was permitted to have visitors on the afternoon of June 4. When the defendant's girl friend arrived to visit him, she was arrested. When her parents arrived to make bond for her, they were also permitted to talk to the defendant and argued with him extensively during the visit. Following these events the defendant became upset about his girl friend and asked to speak with Sgt. Cobb. The sergeant came to defendant's cell and the defendant told Sgt. Cobb that he was concerned that his girl friend had been arrested and that he wanted to make a statement. The defendant asked the sergeant why his girl friend had been arrested, and the sergeant advised him that it was with reference to the incidents that the defendant was involved in and that if he wanted to make a statement it was entirely up to him, even if his girl friend might lie for him. Sgt. Cobb told the defendant that he did not want to play games with him and that he would come back later if the defendant wanted to give a statement.

When Sgt. Cobb returned at approximately 4:30 p. m. on the afternoon of June 4, he took the defendant to the sheriff's office where he again advised him of his *Miranda* rights. The defendant's testimony was that Cobb told him that if he gave a full statement they would go easier on his girl friend if he confessed and that it was these statements which induced defendant to make the statement. The defendant also testified that he would not have given the statement if they had not arrested his girl friend. Sgt. Cobb denied that he made any statements to the defendant promising to go easier on the defendant's girl friend and essentially denied making any promises of any kind to the defendant. Following the discussion be-

tween Sgt. Cobb and the defendant, the statement involved here was given.

Motion to suppress was filed and evidence was introduced and received at the hearing on the motion. On October 28, 1980, the District Court found that in consideration of the totality of the circumstances surrounding the statement given by the defendant on June 4, 1980, that statement was not the product of a free and rational choice, and that the State had failed to show beyond a reasonable doubt that the defendant made the statement freely and voluntarily. The motion to suppress was sustained and the State has appealed.

In determining whether the State has shown the admissibility of custodial statements by the requisite degree of proof, this court will accept the factual determination and credibility choices made by the trial judge unless they are clearly erroneous and in so doing will look to the totality of the circumstances. *State v. Irwin,* 191 Neb. 169, 214 N.W.2d 595 (1974).

Although the District Court stated incorrectly the standard of proof imposed upon the State, it clearly made its determination of voluntariness in consideration of the totality of the circumstances. There can be no doubt that after a defendant has invoked his right to remain silent and has requested counsel, the State bears a heavy burden of proving that the defendant thereafter knowingly, intelligently, and voluntarily waived his constitutional rights. Once the right to remain silent has been invoked, not only interrogation but its functional equivalent must cease. See *Rhode Island v. Innis,* 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980). As the Supreme Court said in that case: "We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part

of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* at 1689.

This court has held that showing the defendant police reports of other crimes was the functional equivalent of questioning if it occurred after the defendant had requested an attorney and invoked his right to remain silent. See *State v. Durand*, 206 Neb. 415, 293 N.W.2d 383 (1980).

In the present case the police officers could be said to have known that their actions, reflected by the evidence here, were likely to elicit an incriminating response from the defendant, and if they did, such actions might well be found to be the functional equivalent of interrogation. If inducements were offered to the defendant to make the statement, as he testified they were, that fact in itself would prevent the statement from being voluntary under any standard of proof. *State v. Smith*, 203 Neb. 64, 277 N.W.2d 441 (1979). In the totality of the circumstances the fact that the defendant first requested counsel and refused to make a statement more than 30 hours before these climactic events occurred, and that the events and discussions occurred several hours after counsel had been appointed for the defendant but before defendant had had any opportunity to talk to counsel, obviously compounds the State's already heavy burden of proving that the defendant's constitutional rights had been knowingly, intelligently, and voluntarily waived.

Whether the trial court determines that a statement was voluntary or involuntary, this court will accept the factual determination and credibility choices made by the trial court and that finding will not be set aside on appeal unless the finding is clearly erroneous. *State v. Irwin, supra; State v. Prim*, 201 Neb. 279, 267 N.W.2d 193 (1978).

The action of the District Court in finding that the

statement of June 4, 1980, was involuntarily given was not clearly erroneous and the order suppressing the statement is affirmed.

AFFIRMED.