William L. LESLIE, Jr., Petitioner,

v.

Louie L. WAINWRIGHT, Respondent.

No. 79–301–Orl–Civ–Y.

United States District Court,
M. D. Florida,
Orlando Division.

April 20, 1981.

William L. Leslie, pro se.

Stewart J. Bellus and Joy B. Shearer, Asst. Attys. Gen., West Palm Beach, Fla., for respondent.

## MEMORANDUM OPINION

GEORGE C. YOUNG, Chief Judge.

This cause is before the Court on the petition of William Lewis Leslie, Jr., for writ of habeas corpus pursuant to 28 U.S.C. § 2254. On July 12, 1976 a state grand jury returned an indictment charging petitioner with first degree murder for the unlawful killing of one Michele Tanasy. Following the denial of petitioner's motion to suppress confession, on February 8, 1977, a jury trial was begun. The state then presented some

testimony; however, prior to the conclusion of the state's case in chief, petitioner decided to enter a plea of nolo contendere to the charge of first degree murder, specifically reserving the right to appeal the trial court's denial of the motion to suppress confession. Petitioner's plea was accepted by the trial court which adjudicated petitioner guilty and sentenced him to life imprisonment, with the special provision that petitioner serve twenty-five years before becoming eligible for parole. Petitioner then appealed the denial of the motion to suppress confession to the Fourth District Court of Appeals which per curiam affirmed the trial court on May 9, 1978. This petition followed. .

In support of his request for habeas relief petitioner contends that the trial court erred in denying the motion to suppress for the following reasons: 1) that he never made the alleged statements of confession that were recorded on tape and transcribed; and 2) that the investigating officers failed to honor petitioner's request to speak to an attorney during his interview on June 30, 1976 and continued to interrogate petitioner subsequent thereto, on July 1, 1976. In response to the merits of the petition, respondent contends that the record in this case clearly supports the trial court's finding of a voluntary confession following an informed waiver of counsel. Respondent further asserts that, as a result of the recent opinion of the Florida Supreme Court in *Brown v. State*, 376 So.2d 382 (Fla.1979), petitioner is not entitled to habeas relief in the absence of an allegation that the legal question on which he seeks review is dispositive of the case.

In *State v. Ashby*, 245 So.2d 225 (Fla. 1971), the Florida Supreme Court expressly approved the practice of Florida courts of permitting an individual to plead nolo contendere, conditioned on reservation for appellate review of a question of law raised in a pretrial motion such as a motion to suppress. Following *Ashby*, Florida appellate courts were divided on the question of whether a criminal defendant, in order to plead nolo contendere and specifically reserve his right to appeal, must show that

the legal issue reserved for appeal is dispositive of the case. *Compare Brown v. State*, 355 So.2d 138 (Fla. 3d D.C.A. 1978) .(*Ashby* nolo plea not appropriate when legal issue raised on appeal is not dispositive of the case) *with Fullard v. State*, 352 So.2d 1271 (Fla. 1st D.C.A. 1977) (*Ashby* nolo plea need not be conditioned upon a dispositive legal issue). This conflict was resolved in the appeal to the Florida Supreme Court of the Third District Court of Appeals' decision in *Brown v. State*.

In *Brown*, the Florida Supreme Court held that a plea of nolo contendere, which is made subject to the condition that defendant be permitted to file an appeal, is permissible only when the legal issue to be determined on appeal is dispositive of the case. 376 So.2d at 384. The Court further held that, for the purposes of an *Ashby* plea and the rule announced in *Brown*, a confession may not be considered dispositive of the case. The defendant in *Brown*, whose appeal had been *dismissed* by the appellate court, was given the opportunity to withdraw his plea of nolo contendere and plead anew so as to avoid any prejudice as a result of the Court's resolution of this issue.

■ Although *Brown* appears to have resolved the conflict in Florida courts relative to *Ashby* pleas, the opinion does not deprive this Court of authority to rule on the merits of petitioner's request for habeas relief. *See Stanley v. Wainwright*, 604 F.2d 379, 380 n. 1 (5th Cir. 1979). At the time of petitioner's appeal of the denial of the motion to suppress confession, Florida courts permitted challenges of this nature to be raised on appeal. *See Fullard, supra.* In addition, petitioner's appeal was apparently considered on its merits pursuant to the Court of Appeals' per curiam affirmance of the trial court; unlike the defendant in *Brown* whose appeal was dismissed. Thus, notwithstanding the Florida Supreme Court's pronouncement in *Brown*, this Court may properly consider the merits of the present petition. *Stanley, supra*, at 380 n. 1.

## BACKGROUND

At the hearing on petitioner's motion to suppress confession the state called as witnesses the investigating police officers, Alan Hansen and Dan Nazarchuk, in support of its position that petitioner's statements were voluntarily made. Officers Hansen and Nazarchuk testified that petitioner walked into the Sanford police station on June 29, 1976 and indicated a desire to talk to someone about the murder of Michele Tanasy. Petitioner was referred to Hansen and Nazarchuk who were investigating Tanasy's death. After being advised of his *Miranda* rights,[1] petitioner informed the officers that he had been with Tanasy on June 26, 1976 prior to the time of her murder. Petitioner's statement was recorded on tape and he was asked to return the following day to read over the statement, once it had been transcribed, and sign it.

Officers Hansen and Nazarchuk testified that petitioner returned on June 30, 1976. Petitioner was again read his rights and signed the *Miranda* card after writing in "No" in response to question number five on the card, which asked whether he desired to consult with an attorney or have one present during the interview. Petitioner was then given his statement of the 29th of June, asked to read it for any corrections and, if there were none, to sign it. The officers stated that petitioner then read the statement, initialed and signed each page and made changes where he thought it necessary.

Following the signing of his prior statement, petitioner was again interviewed. At some point in time during the interview petitioner stated that he wanted to speak to an attorney. The officers testified that upon hearing this they informed petitioner that the interview would be terminated and the tape recorder was turned off. Then, as officer's Hansen and Nazarchuk were leaving the room, each testified that petitioner placed his head in his hands and stated "I killed her, I killed her." Detective Nazarchuk then stated that he responded, "What did you say?" Petitioner then repeated essentially his prior statement. Nazarchuk then asked petitioner if he knew what he was saying. There was no response. Petitioner was then arrested and all questioning ceased.

Both officers also testified that petitioner was again questioned on the morning of July 1, 1976, following petitioner's initial appearance before a judicial officer. The officers testified that petitioner was again read his *Miranda* rights and that petitioner executed an acknowledgement of those rights on the card. During the interview on the 1st of July, the officers stated that petitioner showed them a card with the Public Defender's phone number on it that was given to him during the initial appearance, but that he never indicated a desire to speak to an attorney prior to or during the questioning. This interview was tape recorded, as were the interviews of June 29, and June 30, 1976.

At the close of the presentation of the state's evidence during the suppression hearing, petitioner called several witnesses who were inmates with him in the Orange County Jail on June 30, 1976 and July 1, 1976. Petitioner then took the stand and testified that he was under the influence of

1. Petitioner was read his rights from the standard *"Miranda card"* carried by police officers. Officer Hansen testified that this recitation included the following:

"That you have the right to remain silent. Anything you say will be used in court as evidence against you.

You are entitled to talk to an attorney now and have him present now or at any time during questioning.

If you cannot afford an attorney, one will be appointed for you without cost.

Do you desire to consult with an attorney first or to have one present during this interview?

If at any time hereafter you wish to remain silent or have an attorney present, all questioning will be stopped.

Has anyone, at any time, threatened, coerced, or promised you anything in order to induce you to make a statement now?

Do you understand these rights?

Do you wish to talk to us at this time?" After having been read these rights, petitioner signed the *Miranda* card and proceeded to give his statement.

narcotic drugs during each of his statements, and does not remember making most of the claims contained therein.

## I.

The first ground raised by petitioner is that he never made the alleged statements of confession that were recorded on tape and transcribed for use by the state during the hearing on the motion to suppress. The apparent basis for this allegation is petitioner's claim that he was on drugs at the time of the alleged statements and does not remember making the statements on the various days in question or signing the statement on June 30, 1976, as contended by the investigating officers.

The issue was necessarily before the trial court during the hearing on the motion to suppress. At the close of all of the evidence the trial court found most of petitioner's contentions about an absence of memory due to ingestion of drugs less than credible in light of petitioner's vivid memory of his alleged hallucinations during this same time period. In addition, inherent in the trial court's conclusion that petitioner's statements were voluntarily made was his finding that the statements were, in fact, made by petitioner.

■ A state court's resolution of a factual issue, subsequent to a full and fair hearing on the merits of the factual issue, is presumed to be correct in a federal habeas corpus proceeding unless one or more of the defects set forth in 28 U.S.C. § 2254(d)(1)–(8) appear. *Swain v. Pressley*, 430 U.S. 372, 383, 97 S.Ct. 1224, 1230–31, 51 L.Ed.2d 411 (1977); *Walker v. Lockhart*, 620 F.2d 683, 687 (8th Cir. 1980). Petitioner fails to allege any of the defects set forth in 28 U.S.C. § 2254(d)(1)–(7), and, after review of the entire transcript of the suppression hearing, this Court is unable to conclude that the factual determination of the trial court is not fairly supported by the record. *See* 28 U.S.C. § 2254(d)(8). Thus, the Court finds petitioner's first ground asserted in support of his request for habeas relief without merit.

## II.

The second ground raised in support of the present petition is that the investigating officers failed to honor petitioner's request to speak to an attorney during his interview on June 30, 1976 and continued to interrogate petitioner subsequent thereto, on July 1, 1976. The record in this case fails to support petitioner's claim.

■ The testimony of officers Hansen and Nazarchuk reveals that all questioning of petitioner ceased on the evening of June 30, 1976 once petitioner indicated a desire to speak to an attorney.[2] The next morning petitioner was taken before a judicial officer for initial appearance on the charge of first degree murder. Petitioner was informed of his *Miranda* rights at the initial appearance and was given the card of the Public Defender's office to contact prior to formal appointment of counsel. Petitioner was again informed of his *Miranda* rights by officers Hansen and Nazarchuk prior to their interview of petitioner later that morning and acknowledged his understanding by signing the *Miranda* card.[3]

■ The Supreme Court's opinion in *Miranda* does not create a per se proscription of any further interrogation once an indi-

2. The record does reflect that Officer Nazarchuk exclaimed "What did you say?" immediately after petitioner's declaration that he killed Tanasy, however, petitioner does not challenge Nazarchuk's response in the present petition. Nevertheless, even if presented, this Court would be unable to conclude, based upon the facts presently in the record, that Nazarchuk's excited utterance constituted improper interrogation in violation of *Miranda v. Arizona*, 382 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. Petitioner's signing of the card, though not conclusive, is "usually strong proof" of the voluntariness of the waiver. *See North Carolina v. Butler*, 441 U.S. 369, 373, 99 S.Ct. 1755, 1757, 60 L.Ed.2d 286 (1979); *Blasingame v. Estelle*, 604 F.2d 893, 896 (5th Cir. 1979) (request for an attorney at arraignment does not prevent subsequent stationhouse interrogation where the request at arraignment is not made in such a way as to effectively exercise the right to preclude any subsequent interrogation).

vidual being questioned indicates a desire to remain silent, or otherwise exercise his *Miranda* rights. *Michigan v. Mosley,* 423 U.S. 96, 103 n. 9, 96 S.Ct. 321, 326 n. 9, 46 L.Ed.2d 313 (1975); *Jennings v. United States,* 391 F.2d 512, 515–16 (5th Cir. 1968). *Miranda's* requirement that law enforcement officers respect an individual's exercise of his right to cut off questioning was intended to counterbalance the *coercive* pressure of the custodial setting. *Michigan, supra,* at 104, 96 S.Ct. at 326–27. Thus, "the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning was scrupulously honored'." *Id.*

The facts present in the record presently before the Court reveal that petitioner's "right to cut off questioning" was "scrupulously honored" by the investigating officers. Petitioner was not questioned any further subsequent to his request to speak to an attorney on June 30, 1976. It was not until the next morning and subsequent to petitioner's appearance before a judicial officer that petitioner was again questioned. The record reveals that prior to this questioning petitioner had been informed of his *Miranda* rights on at least two separate occasions on the morning of July 1, 1976. At no time did petitioner request to speak to an attorney or ask that all further questioning cease. Based upon these facts, this Court finds no constitutional error in the denial of the motion to suppress confession. Accordingly, the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be denied.[4]

---

4. Petitioner has filed numerous motions since the filing of his petition, including: motion for discovery, motion for appointment of attorney, and motion to strike; however, the Court finds no merit to any of the motions and each should be considered denied.