STATE OF NEBRASKA, APPELLEE, V.
EDWARD A. TEATER, APPELLANT.

306 N.W.2d 596

Filed June 5, 1981. No. 43666.

Dennis R. Keefe, Lancaster County Public Defender, and Dennis Carlson for appellant.

Paul L. Douglas, Attorney General, and John Boehm for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

McCOWN, J.

The defendant was found guilty of robbery after trial to the court without a jury and sentenced to not less than 2 years' nor more than 4 years' imprisonment.

On October 20, 1979, at about 3 p.m., a man described as approximately 6 feet tall, weighing approximately 250 pounds, and wearing a pair of greasy coveralls and a ski mask entered a service station office at 21st and Holdrege Streets in Lincoln, Nebraska, produced a gun, forced the attendant to go into the restroom, and took over $100. The attendant saw only one person, although he heard voices in the office during the course of the robbery. The police were called and the officers immediately began an investigation in the neighborhood.

At approximately 3:30 p.m. two police officers who were investigating the robbery saw the defendant, who was 6 feet tall and weighed 150 pounds, and Fred Maguire, who was 5 feet 11 inches tall and weighed 260 pounds, come out of a residence which was near the service station. The officers told the two men they were investigating the robbery and wanted to know what the men were doing. The officers asked Maguire for permission to look at a pair of coveralls in the back seat of his automobile, which was parked near the residence. Permission was given. The officers took the coveralls, and one of the officers then took Maguire to the service station where the service station attendant told them that Maguire looked like the robber. Maguire was then

placed under arrest and taken to the police station. Maguire was later charged with armed robbery, pleaded guilty to an amended charge of theft, and was sentenced to 8 months in jail.

Meanwhile, another officer asked the defendant to produce the money he had on his person. The officer took the money, and he and the defendant then waited near the police car for approximately 20 minutes. The defendant was then asked to accompany the officer to police headquarters.

Upon arriving at the police station the defendant was placed in a holding room by himself. The time was approximately 4 p.m. The evidence of the police officers was that soon after the defendant was placed in the holding room the officers read the *Miranda* rights statement to the defendant and the defendant agreed to talk to the police but denied any involvement in the robbery. The defendant completed a standard waiver form and made no request for an attorney. When the defendant denied involvement in the robbery the officers then left him alone in the holding room.

At approximately 5:20 p.m. two police officers returned to the holding room. One of the officers read to and discussed with the defendant possible charges and penalties for robbery and related crimes and told the defendant that it was the officer's opinion that it would be 10 years before the defendant would be released. The officers also admitted that there was a conversation with the defendant concerning the ages of the defendant's children, the length of possible prison terms for him, and the respective ages of his children upon release. Although the officers testified that they made no promises, threats, or inducements to the defendant to make a statement, they admitted that they told the defendant that it would be to his benefit, or better for him, if he made a statement at that time. The defendant again denied involvement in the robbery and the officers left.

Shortly before 7:30 p.m. Detective Peschong and Of-

ficer Melton entered the holding room and the defendant was asked if he had been read his *Miranda* rights, to which he responded in the affirmative. Detective Peschong then asked the defendant to sign a consent to search form giving the officers permission to search the defendant's residence, which the defendant signed. The defendant was again asked about his involvement in the crime and again denied any knowledge of the robbery. The defendant was then informed that the officers had knowledge of his involvement and that he was under arrest for the robbery. The defendant requested that the officers give back the consent to search but was told that it would not be returned. At this point the defendant invoked his rights and advised the officers that he did not wish to speak with them and that he wanted an attorney.

As the officers prepared to leave the room the defendant said something about "it wasn't supposed to be like that." The officers stopped and Detective Peschong told the defendant that he was just trying to get the incident cleared up with as little trouble as possible. The defendant did not reply and the officers then asked him if he was aware of his *Miranda* warnings and if he would be willing to go ahead and speak to them without an attorney. Upon an affirmative reply the officers then obtained an oral statement implicating the defendant in the robbery. A written statement was obtained later that night. No police officer contacted an attorney or gave the defendant an opportunity to contact an attorney at any time before a bond hearing 2 days later.

The defendant's testimony was that he was interrogated on at least two more occasions between 4 p.m. and 7:30 p.m. and that on all five occasions he had requested an attorney and the officers had responded that he would get an attorney in time. He also testified that, in addition to talking about the penalties and the defendant's children, the officers had requested him to take a polygraph test and had told him that if he passed the test he could go home. He testified that he refused and again requested a lawyer.

The defendant was charged with the robbery. A lawyer was appointed for him and the defendant entered a not guilty plea. There was a pretrial hearing on the defendant's motion to suppress the statements. The motion was overruled. The defendant waived jury trial and the case was tried to the court without a jury. The defendant did not testify at trial. The court found the defendant guilty and sentenced him to not less than 2 nor more than 4 years' imprisonment. This appeal followed.

The critical issue on this appeal is whether or not the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to counsel within the mandates of *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), and whether the motion to suppress the statements should have been granted.

In determining whether the State has shown the admissibility of custodial statements by the requisite degree of proof, this court will accept the factual determination and credibility choices made by the trial judge unless they are clearly erroneous, and in so doing we will look to the totality of the circumstances. *State v. Irwin*, 191 Neb. 169, 214 N.W.2d 595 (1974); *State v. Prim*, 201 Neb. 279, 267 N.W.2d 193 (1978).

The trial court in this case obviously accepted the officers' version of the facts. For that reason we have set out the facts which are undisputed or established by the testimony of the officers separately from the defendant's version. The undisputed facts establish that the defendant requested an attorney and refused to talk to the police officers without an attorney at the interrogation at approximately 7:30 p.m. on October 20, 1979. There is also no dispute that the police officers continued their efforts and obtained a statement immediately after the defendant had invoked his right to counsel and his right to remain silent simply because the defendant made a statement that "it wasn't supposed to be that way."

This court has previously set out the *Miranda*-imposed requirements on police officers when a suspect invokes

his constitutional right to remain silent and his right to counsel. In *State v. Fuller*, 203 Neb. 233, 238-39, 278 N.W.2d 756, 759-60 (1979), this court said: "Although Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), does not require an absolute halt to all conversations by the police with the defendant once the right to silence is asserted, observance of the constitutional right is tested by the circumstances to determine whether the right was 'scrupulously honored.' . . .

"Recent cases consider the validity of a subsequent waiver of the once-asserted right to counsel under certain circumstances. [Citations omitted.] These cases hold that the defendant cannot be persuaded to waive his rights and there is a strong presumption against waiver. 'If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel.' [Citing *Miranda v. Arizona.*]"

In *In re Interest of Durand*, 206 Neb. 415, 293 N.W.2d 383 (1980), this court said: "Once *Miranda* warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."

To be admissible, a statement or confession must be free and voluntary. It must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence. *State v. Smith*, 203 Neb. 64, 277 N.W.2d 441 (1979).

The State takes the position that a complaint by a defendant about police conduct occurring in the course of interrogation may be treated as justification for ignoring his request for counsel and his right to remain silent simply because he voices the complaint immediately after he has invoked his rights. The evidence is undisputed that the defendant's assertion of his constitutional

right to remain silent and right to counsel was not "scrupulously honored." The evidence was insufficient, as a matter of law, to meet the heavy burden resting on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. The motion to suppress should have been granted.

In view of the determination made it is unnecessary to discuss the defendant's remaining assignments of error. The conviction and sentence are vacated and the cause remanded to the District Court.

CONVICTION AND SENTENCE VACATED.
REVERSED AND REMANDED.

CLINTON and HASTINGS, JJ., concur in result.