STATE OF NEBRASKA, APPELLEE, v. DAVID JOSEPH LAMB, APPELLANT.

330 N.W.2d 462

Filed February 11, 1983. No. 81-851.

Dennis R. Keefe, Lancaster County Public Defender, and Scott P. Helvie, for appellant.

Paul L. Douglas, Attorney General, and Mel Kammerlohr, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

BOSLAUGH, J.

The defendant appeals from his conviction for first degree murder and sentence to life imprisonment. The defendant has assigned as error the denial of his motion to suppress and the subsequent admission into evidence of the challenged testimony; the "death qualification" of the jury; the admission into evidence of a photograph of the victim; and the giving of an instruction on the defense of intoxication. The defendant has also assigned as error that the verdict was contrary to the evidence and the law and that the finding by the sentencing panel that an aggravating circumstance existed was erroneous.

On July 14, 1980, the defendant shot and killed his wife, Dell Lamb, at their trailer home in Lincoln, Nebraska. After shooting his wife the defendant shot and killed their two dogs. The defendant had been drinking and had purchased the rifle used in the shooting earlier that day. At about 5:22 in the evening, the defendant called the long-distance operator, who referred the call to the Lincoln police dispatcher. The defendant stated that he had shot and killed his wife. When the police arrived at the home, Mrs. Lamb was dead. The defendant was then taken into custody.

At the arraignment on the charge of first degree murder, the defendant stood mute and a plea of not guilty was entered. Later the plea was changed to

not guilty by reason of insanity, and then to not responsible by reason of insanity. After a lengthy trial the jury returned a verdict of guilty of first degree murder. Following conviction, a sentencing panel imposed a sentence of life imprisonment.

The assignment of error concerning the ruling on the pretrial motion to suppress is directed primarily at three statements made to the police by the defendant after his arrest. The first statement was made shortly after the defendant arrived at the police station. Defendant had been taken to the station in a police cruiser driven by Officer Shurtleff. During the ride the defendant made remarks about the temperature of the car and told Shurtleff that he "was sick of seeing his wife suffer." At the station the defendant was placed in a holding room until a detective could be found to interview him. While in this room, the defendant told Shurtleff that he had shot his wife and was going to shoot himself but decided to drink some whiskey first. A few moments later the defendant said to Shurtleff, "How would you like it?" Shurtleff replied, "What do you mean by that?" The defendant answered, "I have to do the cooking, washing, the laundry. And I got tired of it, and I got tired of seeing her suffer so I shot her." Shurtleff testified that he was concerned about whether the defendant was uncomfortable, ill, or angry at being placed in that particular holding room. At the time, no *Miranda* warnings had been given to the defendant and Shurtleff had not posed any other questions to the defendant.

The defendant contends that the statement made in response to the question "What do you mean by that?" should have been suppressed, as it was the result of an unconstitutional custodial interrogation. The defendant contends that before any custodial interrogation by police can take place, the rule of *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), requires that the defendant be apprised of his right against self-incrimination and

of his right to the assistance of counsel. The defendant argues that interrogation occurs either through express questioning or its "functional equivalent," which is defined as police words or actions known by police to be reasonably likely to elicit an incriminating response. *Rhode Island v. Innis,* 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980).

In ruling on the motion to suppress, the trial court found that the statement was not made as a result of interrogation, but rather as the result of a "neutral," "spontaneous" question, not designed to elicit a confession.

The issue presented is whether this question constituted interrogation within the purview of *Miranda* and *Innis.* This court has determined that interrogation occurs when the subject is placed under a compulsion to speak. *In re Interest of Durand,* 206 Neb. 415, 293 N.W.2d 383 (1980). Statements made in a conversation initiated by the accused or spontaneously volunteered by the accused are not the result of interrogation and are admissible. *State v. Pittman,* 210 Neb. 117, 313 N.W.2d 252 (1981); *State v. Red Feather,* 205 Neb. 734, 289 N.W.2d 768 (1980).

A number of cases have held that this type of question does not amount to interrogation. In *Leslie v. Wainwright,* 511 F. Supp. 753 (M.D. Fla. 1981), the court, in a footnote, stated that a police officer's excited utterance to defendant, "What did you say?" did not constitute improper interrogation. In *Com. v. Shepherd,* 269 Pa. Super. 291, 409 A.2d 894, 896 (1979), the court said: "Where there is no expectation of an admission and the police conduct is not an attempt to obtain an admission, there is no interrogation." In *State v. Link,* 289 N.W.2d 102 (Minn. 1979), it was held that questions which had "nothing to do with investigative criminal activity" were not proscribed by *Miranda.* In *United States v. Pauldino,* 487 F.2d 127 (10th Cir. 1973), *cert. denied* 415 U.S. 981, 94 S. Ct. 1572, 39 L. Ed. 2d 878 (1974),

defendant was arrested for auto theft. He volunteered that he had a bill of sale. When asked by police if he had it, defendant replied he did not. The police question was held not to be a violation of *Miranda,* as it was a course of inquiry related and responsive to a volunteered remark. In *Johnson v. State,* 269 Ind. 370, 377, 380 N.E.2d 1236, 1240 (1978), the court stated: "Not every statement uttered by a police officer which is punctuated with a question mark will necessarily constitute an interrogation. . . . Rather, it is necessary to view the statement in the context in which it was made." In the *Johnson* case the officer's remark "What happened?" was held to be more in the nature of a greeting intended for its calming effect than for obtaining an admission, and thus the responsive statement was a spontaneous, voluntary, and unsolicited remark. See, also, *United States v. Voice,* 627 F.2d 138 (8th Cir. 1980).

Factfindings by the trial court on a motion to suppress will not be overturned on appeal unless clearly wrong. A totality of the circumstances test is used. *State v. Strickland,* 209 Neb. 133, 306 N.W.2d 600 (1981); *State v. Sutton,* 207 Neb. 778, 301 N.W.2d 335 (1981). The record supports the trial court's conclusion that the question was a neutral and spontaneous one, not calculated to obtain a confession. Furthermore, the question did not place defendant under a compulsion to speak. The defendant had initiated the conversation, and the officer simply requested clarification. The finding of the trial court was not clearly wrong.

The second statement was made by the defendant to Lieutenant Wilkins, a police detective, on the evening of the day of the shooting. The defendant was given the *Miranda* warnings before the interview began. Detective Wilkins testified that the defendant, at that time, waived his rights freely and voluntarily. In the statement, the defendant admitted that he shot his wife and dogs. The defendant argues that the testimony of Lieutenant Wilkins

and the statement itself should have been suppressed under the rule expressed in *Blackburn v. Alabama,* 361 U.S. 199, 80 S. Ct. 274, 4 L. Ed. 2d 242 (1960), *Malloy v. Hogan,* 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964), and *Lego v. Twomey,* 404 U.S. 477, 92 S. Ct. 619, 30 L. Ed. 2d 618 (1972), because the defendant was in such a state of intoxication that he could not make a voluntary and intelligent waiver of his rights. A blood alcohol test taken approximately 10 minutes after the interview was completed revealed that the defendant's blood alcohol level was then .224 percent. The trial court found that the statements had been made freely, voluntarily, and intelligently.

Intoxication is not conclusive on the issue of voluntariness. In *State v. Laffoon,* 125 Ariz. 484, 487, 610 P.2d 1045, 1048 (1980), the Arizona Supreme Court stated: "The mere fact of intoxication does not render a statement inadmissible. The defendant must be so intoxicated that he is unable to understand the meaning of his statements. . . . If the trial judge is satisfied that under the totality of the circumstances the defendant was able to reason, comprehend, or resist, the statements are to be admitted." In *Mallott v. State,* 608 P.2d 737 (Alaska 1980), it was held that a blood alcohol reading of .31 did not render the defendant's statements inadmissible, as the investigator testified that defendant's responses to questioning were adequate. In *People v. Pawlicke,* 62 Ill. App. 3d 791, 796-97, 379 N.E.2d 798, 801 (1978), it was held that "The fact that the defendant may have consumed two bottles of strawberry wine . . . that she had taken four Librium tablets, that she felt depressed and was contemplating suicide; that her intelligence was 'dull'; and that her attention was focused on the deceased and her emotional relationship with the deceased does not require a conclusion that her subsequent statements were involuntary." See, also, *Rowe v. State,* 41 Md. App. 641, 398 A.2d 485 (1979), and *State v. Kelly,* 376

A.2d 840 (Me. 1977), wherein it was held that statements will be suppressed as involuntary only where it can be shown that defendant was not aware and able to comprehend and communicate with coherence and rationality. See, also, *State v. Rogers,* 208 Neb. 464, 303 N.W.2d 788 (1981).

A determination by the trial court that a statement was made voluntarily will not be disturbed on appeal unless clearly wrong. *State v. Sutton, supra; State v. McNitt,* 207 Neb. 296, 298 N.W.2d 465 (1980); *State v. Williams,* 205 Neb. 56, 287 N.W.2d 18 (1979), *cert. denied* 449 U.S. 891, 101 S. Ct. 255, 66 L. Ed. 2d 120 (1980). A totality of the circumstances test is used. *State v. Teater,* 209 Neb. 127, 306 N.W.2d 596 (1981).

Although there is some conflict in the evidence, the record supports the trial court's finding. Those who encountered defendant early in the day testified that he appeared to know what he was doing. Each police officer who came into contact with defendant following his arrest testified that he was capable of making voluntary and intelligent responses. Defendant answered the operator's questions coherently. His answers to the detective's questions were responsive.

It should be noted that the admission of the statements made to Shurtleff and Wilkins did not prejudice defendant. The defendant had made several voluntary and admissible confessions of guilt throughout the day. A conviction will not be reversed because of the admission of evidence not prejudicial to the defendant. *State v. Brehmer,* 211 Neb. 29, 317 N.W.2d 885 (1982); *State v. Packett,* 206 Neb. 548, 294 N.W.2d 605 (1980); *State v. Smith,* 209 Neb. 505, 308 N.W.2d 820 (1981).

The third statement was made by the defendant to Detectives Rowe and VanButsel about a week after the shooting. The defendant had requested a meeting with the officers. At the meeting the defendant requested that $30 he had on his person at the time

of his arrest be returned to him. No additional *Miranda* warnings were given during the meeting, but *Miranda* warnings had been given to the defendant on at least three separate prior occasions and each time the defendant had waived his rights.

Counsel had been appointed for the defendant at the time this meeting took place. The defendant argues that the information received by police as the result of this meeting should have been suppressed because the sixth amendment to the U.S. Constitution, as interpreted in *Massiah v. United States,* 377 U.S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964), and *Brewer v. Williams,* 430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977), requires the presence of counsel at such an interrogation. It is the defendant's position that he should have had an opportunity to request counsel. The trial court ruled that the statements were volunteered by defendant and were not the result of questioning. The statement regarding the money was admitted as relevant to defendant's mental state and his memory of the events on the day of the shooting.

In order for the right to counsel to come into play, the defendant must be subjected to "interrogation." Spontaneous statements made by the defendant, even after counsel has been requested, if not induced by the police or if made during conversations not initiated by the officers, are not "interrogation." *State v. Pittman,* 210 Neb. 117, 313 N.W.2d 252 (1981). "When an accused initiates the conversation, his statements do not result from 'interrogation' and are admissible." *United States v. Perkins,* 608 F.2d 1064, 1068 (5th Cir. 1979). Further, the fact that the defendant initiated the conversation is a circumstance from which it can be inferred that the right to an attorney was waived. *Id.* The failure of the police to notify counsel, even if aware of such representation, does not violate the defendant's sixth amendment rights to the presence of counsel when the right has been waived voluntarily. *State v.*

*Jackson,* 205 Neb. 806, 290 N.W.2d 458 (1980).

Factfindings by the trial court on a motion to suppress will not be overturned on appeal unless clearly wrong. *State v. Strickland,* 209 Neb. 133, 306 N.W.2d 600 (1981). By requesting the meeting and initiating the conversation regarding the money, the defendant waived his right to counsel voluntarily. The record supports this finding.

The defendant next contends that it was erroneous for the trial court to instruct the jury on the defense of intoxication, over his objection. The defendant argues that this violated the attorney-client privilege and denied him due process of law.

It is the duty of the trial court to instruct the jury on the law of the case whether requested to do so or not. Failure to do so constitutes prejudicial error. *State v. Duis,* 207 Neb. 851, 301 N.W.2d 587 (1981); *Herman v. Midland Ag Service, Inc.,* 200 Neb. 356, 264 N.W.2d 161 (1978). See, also, *State v. Thomas,* 262 N.W.2d 607, 612 (Iowa 1978): "Even without a request, the court must instruct fully on all material issues, stating applicable legal principles supported by requisite evidence"; *State v. Miller,* 120 Ariz. 224, 226, 585 P.2d 244, 246 (1978): "In matters of a fundamental nature, the trial judge is required to instruct the jury on his own motion, even if not requested by the defense, and failure to instruct the jury on a matter vital to the rights of the defendant creates fundamental error"; *People v. Olguin,* 119 Cal. App. 3d 39, 173 Cal. Rptr. 663, 667 (1981): "Even in the absence of a request, the court is under an affirmative duty to give an instruction on defendant's theory of defense where ' ". . . it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense . . . ." ' . . . Moreover, . . . the trial court had a *sua sponte* duty to instruct on these principles pursuant to its obligation to instruct as to the general principles of law even where no such instruction is re-

quested." The defendant would have the trial court ignore this duty.

The factual foundation for the instruction on intoxication is amply supported by the record and, if believed by the jury, would have permitted a finding of guilt of a lesser-included offense. It had some bearing on the mental state of the defendant at the time of the shooting. The defendant has shown no prejudice resulting from the inclusion of this defense along with the insanity defense. Alleged errors in instructions which are not prejudicial to the complaining party are not grounds for reversal of a judgment otherwise correct. *Snyder v. Fort Kearney Hotel Co., Inc.,* 185 Neb. 476, 176 N.W.2d 686 (1970).

Defendant next contends that the verdict was not supported by the evidence and was contrary to law. A jury verdict of guilty will not be overturned on appeal unless it is so lacking in probative force that it can be said as a matter of law the evidence is insufficient to support it. *State v. Thaden,* 210 Neb. 622, 316 N.W.2d 317 (1982); *State v. True,* 210 Neb. 701, 316 N.W.2d 623 (1982).

The statute which was in effect at the time of the crime provided: "A person commits murder in the first degree if he kills another person (1) purposely and with deliberate and premeditated malice . . . ." Neb. Rev. Stat. § 28-303 (Reissue 1979).

There was no dispute about the fact of the killing. In order to prove the requisite mental state, the State was required to show a condition of the mind which was manifested by intentionally doing a wrongful act without just cause or excuse and which is defined as any willful or corrupt intention of the mind. *State v. Johnson,* 200 Neb. 760, 266 N.W.2d 193 (1978).

Defendant relied on the defense of not responsible by reason of insanity. " 'The test of responsibility for crime is the defendant's capacity to understand the nature of the act alleged to be criminal and the

ability to distinguish between right and wrong with respect to the act.' " *State v. Simants,* 197 Neb. 549, 570, 250 N.W.2d 881, 893 (1977), *cert. denied* 434 U.S. 878, 98 S. Ct. 231, 54 L. Ed. 2d 158, *rehearing denied* 434 U.S. 961, 98 S. Ct. 496, 54 L. Ed. 2d 322. Insanity as a defense must be shown to exist at the time of the offense. *State v. Newson,* 183 Neb. 750, 164 N.W.2d 211 (1969). See *State v. Bolton,* 210 Neb. 694, 316 N.W.2d 619 (1982). Defendant argues that his mental functions were impaired because of his long history of alcohol abuse, and his relationship with his wife had become a source of great depression for him because she was chronically ill and was becoming an increasing burden on him. He argues these things prevented him from forming the requisite mental state at the time of the killing.

The record amply supports the verdict of the jury. The defendant admitted that as early as 1975 he thought about shooting his wife and dogs. On the day of the shooting the defendant fabricated stories regarding the rifle he purchased. He told the clerk at the hardware store the rifle was for a nephew. Upon arriving home he told his wife he had found the gun. He stated to the police detective, "I will convict myself if I say that, but I will tell you anyway. I bought a rifle." The evidence shows the defendant was aware of the wrongful quality of his intended acts.

All of the stories given by the defendant regarding the incident were consistent. The police officers and the other witnesses who were in contact with defendant on that day testified that he seemed to know what he was doing. He recalled how much money he had at the time of his arrest. The record shows the defendant knew what he was doing and was able to recall his actions.

Although there were conflicts in the expert testimony, the evidence of the State was that the defendant was not "insane" at the time of the offense within the legal definition of that term. One of the wit-

nesses called by the defendant refused to give an opinion regarding the defendant's mental state at the time of the act. The witnesses generally did not find the defendant to be suffering from an extreme and debilitating form of mental illness. The fact that a defendant had some form of mental illness or defect does not by itself establish lack of responsibility. *State v. Simants, supra.*

The defendant next assigns as error the admission over objection of a photograph of the victim's head showing the bullet wounds and the resulting blood. The defendant objected to the exhibit on the basis of foundation and that its prejudicial effect outweighed its probative value.

This assignment of error was not discussed in the brief. Generally, consideration of a cause in this court is limited to errors assigned and discussed. *State v. Stranghoener,* 208 Neb. 598, 304 N.W.2d 679 (1981).

In a homicide case photographs of the victim are admissible, even if gruesome, if a proper foundation is laid and they are received for purposes of identification, to show the condition of the body, the nature and extent of the wounds, and to establish malice or intent. *State v. Rowe,* 210 Neb. 419, 315 N.W.2d 250 (1982). These requirements were met in this case.

Another error assigned but not discussed was the finding by the sentencing panel that "The murder was especially heinous, atrocious, cruel or manifested exceptional depravity by ordinary standards of morality and intelligence." See Neb. Rev. Stat. § 29-2523(1)(d) (Reissue 1979).

There was evidence that the defendant shot the victim twice in the head at close range while she was lying on a davenport. Although the wounds rendered the victim unconscious, she did not die immediately. The time of the shooting was not fixed precisely, but it may have been 1 or 2 hours before the telephone call at 5:22 p.m. As the sentencing panel found, "Defendant killed his wife without just

cause or excuse. The murder of Dell Lamb was planned, callous, cold-blooded and involved cruel disregard for human life. The killing was totally and senselessly bereft of any regard for human life. Under the circumstances of this murder, the murder was especially atrocious, cruel and manifested exceptional depravity by ordinary standards of morality and intelligence."

In any event, the finding that the aggravating circumstance existed was not prejudicial to the defendant. The finding would be of importance only if a death sentence had been imposed. Neb. Rev. Stat. §§ 29-2519 et seq. (Reissue 1979). The sentence of life imprisonment which was imposed in this case was fully justified by the record and was not an abuse of discretion.

The defendant's final assignment of error contends the trial court erred in permitting "death qualification" of the jury. Defendant's motion to prohibit asking the jury panel, on voir dire, questions relative to their feeling on the death penalty was overruled. The court stated, in overruling the motion, that such questions would be permitted within the scope of *Lockett v. Ohio,* 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978). Defendant had argued that such voir dire would result in a "prosecution prone" jury, as those who were strongly opposed to the death penalty would be excused from the jury through the State's use of its challenges. Defendant argued that such a jury would be more likely to convict.

In *Lockett, supra,* the prosecution asked the panel whether any of the jurors were so opposed to capital punishment that they could not make their determination of guilt based solely upon the evidence and the law. The court asked those who responded affirmatively whether their opposition to the death penalty was of such strength that it would prohibit them from taking the oath. Four veniremen responded affirmatively to both inquiries and were

excused. As in Nebraska, a jury in Ohio does not make the sentencing decision in capital cases.

The Court held such voir dire proper as "[e]ach of the excluded veniremen in this case made it 'unmistakably clear' that they could not be trusted to 'abide by existing law' and 'to follow conscientiously the instructions' of the trial judge. . . . They were thus properly excluded under *Witherspoon*, even assuming, *arguendo*, that *Witherspoon* provides a basis for attacking the conviction as well as the sentence in a capital case." 438 U.S. at 596.

In *Witherspoon v. Illinois*, 391 U.S. 510, 88 S. Ct. 1770, 20 L. Ed. 2d 776 (1968), *rehearing denied* 393 U.S. 898, 89 S. Ct. 67, 21 L. Ed. 2d 186, the Court held that without concrete evidence to support the "prosecution prone" theory, a *conviction* will not be overturned simply because of a "death-qualifying" voir dire. However, the Court held that where the sentencing function is entrusted to the jury, excluding all jurors opposed to the death penalty falls "woefully short of that impartiality to which the petitioner was entitled under the Sixth and Fourteenth Amendments." 391 U.S. at 518.

In *State v. Anderson and Hochstein*, 207 Neb. 51, 296 N.W.2d 440 (1980), *cert. denied* 450 U.S. 1025, 101 S. Ct. 1731, 68 L. Ed. 2d 219 (1981), this court dealt with the issue of "death qualification" of the jury. Relying upon the decision in *Witherspoon, supra*, we held that that decision does not preclude exclusion of a juror who has indicated an inability to fairly and impartially determine guilt. In *State v. Kirby*, 185 Neb. 240, 249, 175 N.W.2d 87, 93 (1970), this court stated, "One who cannot subordinate his personal views to what he perceives to be his duty to abide by his oath as a juror and to obey the law of the state must be excused for cause."

In the present case the court asked the jury panel: "This is a case of murder in the first degree. . . . And one of the possible penalties is the death penalty. The Judge makes the final decision in the

case in the event of conviction, and with the punishment you have absolutely nothing to do with it. The question is whether or not any of you have conscientious scruples against the death penalty." The record does not reflect any responses of the jury. The defendant does not contend that any juror was excluded as a result of this question.

The question asked by the trial court was of the type permitted in the cases cited, as it was directed at whether the jurors would be able to render a verdict upon an impartial consideration of the evidence and the law. The defendant has not demonstrated by concrete evidence that the jury was conviction prone. Additionally, the sentencing of the defendant did not rest with the jury.

As a final consideration, since defendant was not sentenced to death, he has not demonstrated prejudice either in regard to his conviction or his sentence. In the absence of prejudice, a conviction otherwise correct will not be overturned. *State v. Brehmer,* 211 Neb. 29, 317 N.W.2d 885 (1982); *State v. Packett,* 206 Neb. 548, 294 N.W.2d 605 (1980).

There being no error, the judgment is affirmed.

AFFIRMED.

CLINTON, J., not participating.