In re Interest of Gary L. Durand, a child under
18 years of age. State of Nebraska, appellee, v.
Gary L. Durand, appellant.
293 N. W. 2d 383

Filed June 10, 1980. No. 42796.

Thomas M. Kenney, Douglas County Public Defender, and Bennett G. Hornstein, for appellant.

Donald L. Knowles, Douglas County Attorney, and Marjorie A. Records, for appellee.

Heard before Krivosha, C. J., Boslaugh, McCown, Clinton, Brodkey, White, and Hastings, JJ.

White, J.

This is an appeal from the Separate Juvenile Court of Douglas County, Nebraska, finding Gary L. Durand, Jr., a minor, to be a child within the meaning of Neb. Rev. Stat. § 43-202(3)(b) (Reissue 1978)

and placing defendant on probation for a term of 6 months. The minor appeals and assigns two errors: (1) That the Separate Juvenile Court committed reversible error in adjudicating Gary L. Durand pursuant to § 43-202(3)(b) to have violated a law of the State constituting a felony, to wit Neb. Rev. Stat. § 28-533 (Reissue 1975), when the petition fails to charge essential elements of the statutory offense; and (2) That the court erred in overruling defendant's motion to suppress certain statements to a police officer. We reverse.

Section 43-202(3)(b) gives to the juvenile courts "concurrent original jurisdiction with the district court as to any child under the age of eighteen years at the time he has violated any law of the state constituting a felony . . . ."

Section 28-533 (repealed in 1979) provided:

> Whoever willfully and maliciously, either in the daytime or night season, enters any dwelling house . . . and *attempts* to kill, disfigure or maim any person, or rob or steal, stab, [or] commit a rape . . ., shall, upon conviction thereof, be sentenced to the Nebraska Penal and Correctional Complex for any term not more than twenty years nor less than three years.

(Emphasis supplied.) The essential elements of the crime are: entry and an attempt to commit one of the enumerated acts. The entry is unlawful if proved to be with an intent to steal. *State v. Baker,* 183 Neb. 499, 161 N.W.2d 864 (1968), *cert. denied,* 394 U.S. 949 (1969). This statute embraces an unlawful entry of a building followed by commission or an attempt to commit one of the specific acts enumerated. *Fredericksen v. Dickson,* 148 Neb. 739, 29 N.W.2d 334 (1947); *McElhaney v. Fenton,* 115 Neb. 299, 212 N.W. 612 (1927). The mere allegation of intent to commit one of the enumerated crimes, unaccompanied by any allegations of overt acts towards its accomplish-

ment, is insufficient. *Smith v. State,* 68 Neb. 204, 94 N.W. 106 (1903).

The petition in the Separate Juvenile Court alleged that: "On or about November 30, 1978, said child did willfully and maliciously enter a dwelling, occupied by Marie Book, located at or near 3048 Redick Avenue, in the City of Omaha, Douglas County, Nebraska, with the intent to steal." It is obvious that the petition was defective insofar as it purported to accuse the minor of committing a crime. The mere entry of a building with the intent to steal, absent any attempt or the commission of a crime, is without the statute; it is not proscribed by the statute. Defects or omissions in indictments or informations which are of such a fundamental character as to make the indictment wholly invalid are generally not subject to waiver by the accused. *Gibbs v. Johns,* 183 Neb. 618, 163 N.W.2d 110 (1968).

The State cites a number of cases for the proposition that the accused waives all defects which may be excepted to if he enters a motion to quash, a plea in abatement, a demurrer to an information, a plea in bar, or a plea to the general issue. In *State v. Etchison,* 190 Neb. 629, 211 N.W.2d 405 (1973), the opinion recites that a motion to quash was denied after a plea of not guilty had been entered by the defendant. This court held that the motion to quash by reason of an alleged insufficiency of the information was properly denied. The opinion fails to disclose the alleged deficiency, specifically whether it was the omission, as here, of one of the essential elements of the crime charged or was a mere technical defect as in *State v. Gilman,* 181 Neb. 390, 148 N.W.2d 847 (1967). In that case, after a verdict, a motion to quash was properly overruled on the grounds that the complaint was unverified. In *State v. Fiegl,* 184 Neb. 704, 171 N.W.2d 643 (1969), the court again held that all defects that may be excepted to by a motion to quash an information are

taken to be waived if the defendant pleads the general issue. That opinion also fails to set forth whether the defect was merely a technical one or whether one of the essential elements of the crime was not charged. These cases cited by the State are not persuasive. The information or, as in this case, the petition is so defective that it omits one of the essential elements of the crime itself so as to charge no crime at all. The accused cannot be said to have waived any right to strike the information or to quash the information or petition on the rather tenuous pretext that he has pled to a noncrime. The defendant's first assignment of error is meritorious and requires reversal.

A discussion of the second assignment of error requires a recitation of the facts. The defendant was arrested and, at 1 p.m. on December 20, 1978, he was taken into the interrogation room of the Omaha police department for questioning by Raymond Swiercek, a detective with the burglary unit of the Omaha police department. After advising the defendant of his right to remain silent and his right to a lawyer, the officer asked the defendant, "Knowing your rights in this matter, are you willing to make a statement to me now?" The response was, "No." The officer did not cease conversation with the defendant. Instead, he showed him police reports of other crimes. He again advised him of his rights 23 minutes later. At that time, the defendant agreed to make a statement. The defendant's statement implicated him in a theft of money. A written statement was obtained at approximately 3:30 p.m. the same day.

At the defendant's suppression hearing, Officer Swiercek gave the following testimony:

Q. Did he tell you why he was going to give this statement to you?

A. He - yes, he did want some consideration and he asked for consideration.

Q. Okay. Consideration - what did this con-

sideration pertain to as you -

A. Other burglaries that we knew him to be involved in.

The defendant was employed on occasion to do yard work and odd jobs at the home of Marie Book at 3048 Redick Avenue. On November 30, 1978, he had done yard work for her and she discovered him in her bedroom. After he left, she called police, who asked her to check her purse. When she did so, she discovered $10 in change missing. Gary's presence in the bedroom was without her consent.

The standards for the admissibility of incriminating statements were first definitively set out in *Miranda v. Arizona,* 384 U.S. 436 (1966). Concerning a suspect's assertion of his right to remain silent, *Miranda* stated:

> Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked.

*Id.* at 473-74.

In the recent case of *Rhode Island v. Innis,* 100 S. Ct. 1682 (1980), the defendant made a self-incriminating response while he was under arrest in a police car. The defendant had been advised of his *Miranda* rights, and he stated that he understood his rights and wanted to speak with a lawyer. While enroute to the station, two officers engaged in a con-

versation concerning a missing shotgun, allegedly used in the commission of the crime. One of the officers stated that there were "a lot of handicapped children running around in this area, and God forbid one of them might find a weapon with shells and they might hurt themselves." *Id.* at 1686. Defendant stated he would show the officers where the gun was located. Upon returning to the scene of the arrest, the defendant was again informed of his rights. Determining that the defendant was not "interrogated" in violation of his right under *Miranda* to remain silent until he had consulted with a lawyer, the court said:

> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Id.* at 1689.

Turning to the facts of the present case, we conclude the defendant was subject to the functional equivalent of questioning after he requested an attorney and had an absolute right to have any interrogation cease until an attorney was present. The police officer should have known that showing the defendant the police reports was likely to elicit an incriminating response from the defendant. If a suspect is told he has a right to have an attorney present during interrogation and he chooses to cut off questioning until counsel can be obtained, his choice must be "scrupulously honored" by the police. *Michigan v. Mosley,* 423 U.S. 96 (1975).

In *Michigan v. Mosley,* the defendant was arrested by Detroit robbery bureau detectives, who advised him of his *Miranda* rights and were told by him that he did not want to respond to questions about the robberies for which he was arrested. The interrogation then ceased and the defendant was jailed. After an interval of more than 2 hours, the defendant was again given the *Miranda* warnings, interrogated by a homicide bureau detective about a homicide unrelated to the robberies, and confessed to the homicide. Determining that the confession was admissible, the court said:

> This is not a case, therefore, where the police failed to honor a decision of a person in custody to cut off questioning, either by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind. In contrast to such practices, the police here immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation.

*Id.* at 105-06. Elsewhere in *Michigan v. Mosley,* the court said that: "To permit the continuation of custodial interrogation after a momentary cessation would clearly frustrate the purposes of *Miranda* by allowing repeated rounds of questioning to undermine the will of the person being questioned." *Id.* at 102.

The State asserts that, since there was no real interrogation, simply a recitation of other crimes of which the defendant was accused, somehow this process did not violate the rule of *Miranda*. We disagree. Rather, the implication is that there arose the threat of other prosecutions for other crimes.

This was a direct and contributing factor to the statement and demonstrates its involuntariness. Indeed, that is confirmed by the fact that consideration "was given to the appellant" with reference to the other crimes, i.e., the detective agreed not to press charges on other suspected burglaries.

The general rule applicable to custodial interrogations by the police is that, if the individual indicates in any manner, at any time prior to or during the questioning, that he wishes to remain silent, the interrogation must cease. *Miranda v. Arizona, supra; State v. Fuller,* 203 Neb. 233, 278 N.W.2d 756 (1979). An interrogation occurs when the subject is placed under a compulsion to speak. *State v. Weinacht,* 203 Neb. 124, 277 N.W. 2d 567 (1979). It is obvious that the defendant was placed under a compulsion to speak and that he was interrogated. A 23-minute interval between assertions of rights under *Miranda v. Arizona, supra,* violates the spirit of that decision and is in direct contravention of *Michigan v. Mosely, supra.* The assignment of error is meritorious. The confession should not have been admitted.

The order of the Separate Juvenile Court is reversed and dismissed.

REVERSED AND DISMISSED.

BOSLAUGH, J., concurring.

I concur in the judgment. The failure of the information to state a crime may be raised at any time. *Nelson v. State,* 167 Neb. 575, 94 N.W.2d 1 (1959). The "consideration" offered to the defendant was an inducement which prevented the statement from being voluntary. *State v. Smith,* 203 Neb. 64, 277 N.W.2d 441 (1979).

CLINTON, J., joins in this concurrence.