STATE OF NEBRASKA, APPELLEE, v. HERMAN THUNDER HAWK, APPELLANT.

322 N.W.2d 669

Filed July 30, 1982. No. 81-697.

James T. Hansen, Scotts Bluff County Public Defender, and Jonathan Pratter, for appellant.

Paul L. Douglas, Attorney General, and Sharon M. Lindgren, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

WHITE, J.

This is an appeal from a judgment of conviction upon a jury verdict finding the defendant, Herman

Thunder Hawk, guilty of theft of movable property. The defendant assigns as error the admission of certain statements he made to a Nebraska state trooper while in custody.

On April 21, 1981, at approximately 6:14 a.m., Officer Donald Keiper of the Nebraska State Patrol was summoned to the scene of an accident 8.2 miles south of Chadron, Nebraska, on Highway 385. When he arrived, a number of people were present, including the defendant, his brother, the driver of the other vehicle involved in the accident, the Chadron rescue unit, and several other volunteers. Officer Keiper testified that upon his arrival the defendant was seated in the driver's seat of a van which was involved in the accident. Officer Keiper asked the defendant if he was the driver of the van and the defendant failed to reply. Keiper also testified: "There was a strong odor of alcohol about his person. He appeared to me to be intoxicated. He was having trouble holding his head up and was not coherent, almost as if he was trying — about to pass out."

Officer Keiper also testified that a witness to the accident told him the defendant's brother, Joseph Thunder Hawk, was attempting to pull the defendant from behind the wheel of the van when the witness arrived on the scene. With this information Officer Keiper went over to Mr. Thunder Hawk, who was on a stretcher, and advised him that he was under arrest for driving a motor vehicle while under the influence of alcohol.

The defendant was taken by the Chadron rescue unit to the Chadron hospital. While the defendant was en route to the hospital, Officer Keiper radioed the Chadron Police Department to send someone to the hospital to secure a blood or urine specimen from the defendant. After filling out his accident report and completing his investigation at the accident scene, Officer Keiper went to the Chadron hospital.

When he arrived at the hospital, Officer Souchek of the Chadron Police Department was just in the process of getting a urine specimen from the defendant. After the specimen was taken, Officer Keiper questioned the defendant in the reception room at the hospital.

Prior to questioning the defendant, the officer did not read to the defendant the *Miranda* warnings. Officer Keiper testified that he asked the defendant his name, birth date, and to produce his driver's license. In response the defendant gave his name, birth date, address, and stated that he did not have a driver's license. Keiper then asked the defendant what happened at the scene of the accident. The defendant responded that the "damn truck ran us off the road." Officer Keiper then told the defendant that he was headed south and had crossed the centerline and struck a truck. The defendant told the officer that he was headed for Porcupine, South Dakota.

The officer also testified that at the time of questioning the defendant he had the registration to the van which was registered to a Ronald Sylvester. Officer Keiper asked the defendant who owned the van, and the defendant said he did not know. The officer also asked if the defendant was driving, and he replied that he was the driver. When asked what the purpose of this line of questioning was, the officer replied that his motive in questioning defendant was solely to complete his accident report. However, he further testified in response to the question: "At any time during the questioning at the hospital were you attempting to obtain information to use in a drunk drive case? A. No, I was not, other than ascertain the fact that it was to support the fact that he was driving. I had information from other sources that he was driving. But he was alert, was talking to me, and I needed to know, or I wanted to know from him if he was driving, if he was."

After the defendant was asked if he knew who owned the van and he replied that he did not, Officer Keiper transported the defendant to the Dawes County jail. Upon arrival at the jail, the defendant was read his rights for the first time. The defendant did not waive his *Miranda* rights and he refused to talk to the officer further.

Subsequently the defendant was tried for theft of movable property, a violation of Neb. Rev. Stat. § 28-511(1) (Reissue 1979), a Class III felony. At trial, all statements the defendant made at the hospital were introduced into evidence over the defendant's objections. The jury returned a verdict of guilty for the offense charged. The defendant was sentenced to imprisonment for a period of from 2 to 4 years in the Nebraska Penal and Correctional Complex. This appeal ensued. We reverse.

The defendant argues that the prosecution may not use any statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless the State demonstrates the use of procedural safeguards effective to secure the privilege against compelled self-incrimination. More specifically, prior to any questioning, a person in custody must be given *Miranda* warnings. See *Miranda v. Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). The State, on the other hand, argues that *Miranda* warnings and the requirements of the *Miranda* case do not apply to traffic offenses such as driving while intoxicated. Further, the State argues that the admission of the statements made by the defendant was at most harmless error.

In *Wiseman v. Sullivan,* 190 Neb. 724, 211 N.W.2d 906 (1973), we held: "The right to a Miranda type warning applies only to in-custody interrogation and has no application to a proper request to a motor vehicle driver to give a specimen under the implied consent statute." (Syllabus of the court.)

The court in *Wiseman* stated at 730, 211 N.W.2d at

911: "What is said in this opinion should not be taken to suggest that the police may in any way interfere with a suspect's right to counsel in connection with any charge of crime which may be related to the driving while intoxicated investigation as, for example, to drunk driving itself or motor vehicle homicide. As to these, of course, the ordinary rules pertaining to right to counsel apply. We simply say such right does not apply to the taking of samples under the implied consent statute."

We feel this case turns on whether or not the defendant was, in fact, in custody. The U.S. Supreme Court in *Miranda v. Arizona, supra* at 444, held: "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." This court defined custodial interrogation in *In re Interest of Durand,* 206 Neb. 415, 293 N.W.2d 383 (1980). In that case, this court relied on *Rhode Island v. Innis,* 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980), and stated at 420, 293 N.W.2d at 386: " '[T]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. . . .' " In this case, there is no doubt that the defendant was in custody at the time the statements were elicited. On both direct and cross-examination during the suppression hearing and on direct examination at the trial, the officer stated that the defendant was arrested at the scene of the traffic accident prior to being transported to the hospital. At the suppression hearing, Officer Keiper was asked on cross-examination: "Q. Was Mr. Thunder Hawk placed

under arrest at the scene of the accident? A. Yes. Q. So he was in custody while he was being transported to the hospital. A. Yes. Q. He was also in custody at the hospital? A. Yes, sir. Q. He would not have been permitted to leave the hospital? A. No. Q. What was Mr. Thunder Hawk placed under arrest for? A. Driving while under the influence of alcohol." Officer Keiper also testified that the reception room at the hospital was approximately 12 feet by 12 feet and that he and the defendant were the only persons present at the time of the questioning.

The officer testified that the statements given by the defendant were responses to express questions asked by the officer. At the time the incriminating statements were made, the investigation had reached the accusatory stage and had clearly focused on the defendant. The interrogation was aimed at soliciting incriminating statements from the defendant upon whom the investigation focused. At the time the officer asked the defendant who owned the vehicle, he already knew the answer, since he (the officer) had the vehicle registration. The *Miranda* safeguards were not intended to create a constitutional straitjacket. Volunteered and general on-the-scene questioning is not prohibited by its holding.

The officer should have given the *Miranda* warnings prior to any questions he asked at the hospital. His failure to do so was a violation of the defendant's rights against self-incrimination. We are not at this time stating whether or not the *Miranda* requirements apply to traffic offenses. What we are saying is that where a defendant is arrested and taken into custody, *Miranda* warnings must be given before he is interrogated.

The State argues that even if the *Miranda* warnings should have been given to the defendant prior to questioning him at the hospital, the admission of his statements at his trial was harmless error. We do

not agree. In *State v. Lee,* 196 Neb. 344, 347, 243 N.W.2d 53, 54 (1976), this court said: " 'The admission of testimony wrongfully received in a case tried to a jury is prejudicial error where it may have influenced the verdict.' "

The crime that the defendant was charged with requires the State to prove that he took the van or exercised control over it, and that he had the intent to deprive the owner thereof. The statements wrongfully admitted into evidence make up a large portion of the State's case against the defendant. Absent this evidence, the State must still prove that the defendant took the van or exercised control over it, and had the requisite intent to deprive the owner thereof. Viewing the other evidence in the record, reasonable minds could draw different conclusions. We cannot say beyond a reasonable doubt that the admission of this testimony did not influence the verdict and therefore we cannot hold the admission of these statements as harmless error.

The judgment of the District Court is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.