STATE OF NEBRASKA, APPELLANT, V. PERRY J. FAVERO,
APPELLEE.

331 N.W.2d 259

Filed March 11, 1983. No. 82-778.

Michael G. Heavican, Lancaster County Attorney,
John A. Colborn, and Jan W. Sharp, for appellant.

Dennis R. Keefe, Lancaster County Public Defender, and Sean J. Brennan, for appellee.

WHITE, J.

This is an appeal by the State of Nebraska pursuant to Neb. Rev. Stat. § 29-116 (Cum. Supp. 1982)
from an order of the District Court for Lancaster
County, Nebraska, suppressing certain oral statements made by the defendant to a detective of the
Lincoln Police Department. The statements made
were in connection with the alleged participation of
the defendant in the attempted second degree
murder of Charles Ashley and the use of a deadly
weapon in the commission of a felony. Reversed.

The standard of review in this case is that the
finding of the trial court that statements or confes-

sions were or were not intelligently or voluntarily made will not be set aside on appeal unless the finding is clearly erroneous. *State v. Irwin,* 191 Neb. 169, 214 N.W.2d 595 (1974); *State v. Prim,* 201 Neb. 279, 267 N.W.2d 193 (1978).

The defendant is presently charged and awaiting trial in the Lancaster County District Court on the two above-mentioned felony counts. On August 26, 1982, the defendant filed a motion to suppress any and all statements made by him at the time of and subsequent to his arrest. At the hearing on the motion to suppress, the parties stipulated that the statements were taken from the defendant in violation of his constitutional rights to remain silent and to consult with an attorney prior to and during questioning. Thus, the State conceded that the defendant's statements were inadmissible in its case in chief. However, the State maintained that the statements were admissible evidence for impeachment purposes should the defendant testify at trial. The trial court granted the motion to suppress and held that the statements could not be used for any purpose. The State appeals, seeking review of that order.

The evidence reveals that on April 29, 1982, at approximately 4 p.m., Detective Larry E. Barksdale began an interview with the defendant. Barksdale told the defendant that the two other people who were arrested in connection with the attempted murder of Charles Ashley were making statements to the effect that the defendant was responsible for the offense. Barksdale also told the defendant that evidence had been found near the scene and that there was a good possibility that he was going to jail.

After asking the defendant whether he would make a statement or answer questions in relation to the attempted murder of Charles Ashley, Barksdale read the defendant the *Miranda* warnings at approximately 4:40 p.m. The defendant refused to make a statement and requested an attorney. Barksdale continued questioning and the defendant

stated that he wanted to tell what had happened but felt he should have an attorney present before doing so. No steps were taken to obtain an attorney, and Barksdale continued questioning and stated that as long as an attorney was not present, any statement made could not be used as an admission in court, so the defendant could tell him "off the record" what his side of the story was. The defendant then proceeded to relate how he had beaten Charles Ashley in retaliation for homosexual acts committed on the defendant's person.

In *Harris v. New York,* 401 U.S. 222, 91 S. Ct. 643, 28 L. Ed. 2d 1 (1971), the U.S. Supreme Court held that a statement that was inadmissible against the defendant in the prosecution's case in chief because of the failure of the police to give the defendant *Miranda* warnings could be used for impeachment to attack the credibility of the defendant's trial testimony. In *Harris* the defendant failed to make a claim that the statements made to police were coerced or involuntary.

In *Oregon v. Hass,* 420 U.S. 714, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975), Hass was given *Miranda* warnings after his arrest. He requested that he be allowed to telephone an attorney but was told he could not do so until arrival at the police station. He then provided inculpatory information which was later suppressed. In *Hass* the Court pointed out that the only possible distinction between *Harris* and the case before it was the fact that the *Miranda* warnings given Hass were proper, whereas those given Harris were defective. The Court stated at 723: "The deterrence of the exclusionary rule, of course, lies in the necessity to give the warnings. That these warnings, in a given case, may prove to be incomplete, and therefore defective, as in *Harris,* does not mean that they have not served as a deterrent to the officer who is not then aware of their defect; and to the officer who is aware of the defect the full deterrence remains. The effect of inadmissibility in

the *Harris* case and in this case is the same: inadmissibility would pervert the constitutional right into a right to falsify free from the embarrassment of impeachment evidence from the defendant's own mouth." The *Hass* court reaffirmed *Harris*, which held that having denied making the statements, evidence of those statements may be used to impeach that denial. The *Hass* court also indicated the analysis which would be used in dealing with police abuse of the *Miranda* process. The Court stated that "If, in a given case, the officer's conduct amounts to abuse, that case, like those involving coercion or duress, may be taken care of when it arises measured by the traditional standards for evaluating voluntariness and trustworthiness." *Hass* at 723.

Unlike the defendants in *Harris* and *Hass,* the defendants in *Mincey v. Arizona,* 437 U.S. 385, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978), and *New Jersey v. Portash,* 440 U.S. 450, 99 S. Ct. 1292, 59 L. Ed. 2d 501 (1979), challenged the use of their statements for impeachment purposes with claims that the statements were not voluntary.

In *Mincey* the defendant had been wounded and was in a hospital receiving treatment at the time he was interrogated. While in severe pain and in a state of confusion, the defendant stated that he wished to remain silent and consult with an attorney. Mincey's request was ignored and questioning continued until a statement was obtained. The State of Arizona used the statement to impeach the defendant when he took the stand to testify in his behalf. In reversing the conviction the U.S. Supreme Court found that the statement was not the product of a free will and rational intellect and therefore was not voluntary. The *Mincey* court concluded that the impeachment use of the defendant's involuntary statements violated due process. In reaching its determination, the *Mincey* court stated at 401: "There were not present in this case some of the gross abuses that have led the Court in other cases to find

confessions involuntary, such as beatings . . . or 'truth serums,'. . . . But 'the blood of the accused is not the only hallmark of an unconstitutional inquisition.' . . . Determination of whether a statement is involuntary 'requires more than a mere color-matching of cases.' . . . It requires careful evaluation of all the circumstances of the interrogation.''

In *Portash, supra,* the defendant testified at a grand jury hearing pursuant to a grant of immunity after first expressing an intention to assert his privilege against self-incrimination. The defendant was subsequently prosecuted and testified at his trial inconsistently with his grand jury testimony. The grand jury testimony was then utilized to impeach his trial testimony and he appealed. The *Portash* court noted that in *Harris* and *Hass* the process used in determining whether the impeachment evidence was properly admitted amounted to a balance between an attempt to deter police illegality and the need to prevent perjury. Referring to *Harris* and *Hass,* the *Portash* court stated at 458-59: ''In both cases the Court weighed the incremental deterrence of police illegality against the strong policy against countenancing perjury. In the balance, use of the incriminating statements for impeachment purposes prevailed. The State asks that we apply the same reasoning to this case. It points out that the interest in preventing perjury is just as strongly involved, and that the statements made to the grand jury are at least as reliable as those made by the defendants in *Harris* and *Hass.*

''But the State has overlooked a crucial distinction between those cases and this one. In *Harris* and *Hass* the Court expressly noted that the defendant made 'no claim that the statements made to the police were coerced or involuntary,' . . . . That recognition was central to the decisions in those cases.

''The Fifth and Fourteenth Amendments provide that no person 'shall be *compelled* in any criminal

case to be a witness against himself.' As we reaffirmed last Term, a defendant's compelled statements, as opposed to statements taken in violation of *Miranda*, may not be put to any testimonial use whatever against him in a criminal trial. 'But *any* criminal trial use against a defendant of his *involuntary* statement is a denial of due process of law.' "

This court in *State v. Bazis,* 190 Neb. 586, 210 N.W.2d 919 (1973), followed the rule as set forth in *Harris*. See, also, *State v. Escamilla,* 195 Neb. 558, 239 N.W.2d 270 (1976). However, once the right to counsel is invoked, the rule in *Harris* becomes hard to reconcile with our decision in *In re Interest of Durand,* 206 Neb. 415, 420, 293 N.W.2d 383, 387 (1980), in which we stated: "If a suspect is told he has a right to have an attorney present during interrogation and he chooses to cut off questioning until counsel can be obtained, his choice must be 'scrupulously honored' by the police." The *Harris* rule also conflicts with the U.S. Supreme Court's decisions in *Edwards v. Arizona,* 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), stating that once the right to counsel is exercised by the accused, the interrogation must cease until an attorney is present, and *Brooks v. Tennessee,* 406 U.S. 605, 612, 92 S. Ct. 1891, 32 L. Ed. 2d 358 (1972), in which the Court remarked that "Whether the defendant is to testify is an important tactical decision as well as a matter of constitutional right."

The facts in the present case are no different from those in *In re Interest of Durand, supra,* except that the statement is offered for impeachment purposes. After the defendant demanded an attorney for the second time, the detective ignored the defendant's request in an attempt to gather impeachment material. The defendant was assured that his statement could not be used against him as a confession or admission and that the detective just wanted to hear his side of the story "off the record."

The U.S. Supreme Court was well aware that this

type of illegal police conduct would occur when it stated in *Oregon v. Hass,* 420 U.S. 714, 723, 95 S. Ct. 1215, 43 L. Ed. 2d 570 (1975), that "One might concede that when proper *Miranda* warnings have been given, and the officer then continues his interrogation after the suspect asks for an attorney, the officer may be said to have little to lose and perhaps something to gain by way of possibly uncovering impeachment material."

Therefore, utilizing the test set forth in *Portash,* I must find that the facts of the instant case do not reveal a compelled involuntary statement of the type condemned in *Mincey* and *Portash.* In fact, the trial court found the statement was freely and voluntarily made but that the questioning procedure used by the detective had "an unfairness about it that violates, at least in this Court's mind, the concept of due process." The precise unfairness mentioned by the trial court is within the exceptions to *Miranda* contemplated by *Harris* and *Hass* and apparently did not persuade the majority in those cases to exclude the statements as impeachment evidence.

It may well be necessary, in view of the decisions of the U.S. Supreme Court which have considerably weakened the once absolute strictures of *Miranda,* for this court to reconsider our recent statements in *State v. Harper,* 208 Neb. 568, 304 N.W.2d 663 (1981), and to formulate, as have a number of the states, a state constitutional basis to deal with police conduct violative of *Miranda.* However, this determination should be made by the court and not by one judge of the court. Therefore, in light of the U.S. Supreme Court's rulings on the subject and this court's reluctance to extend the Nebraska constitutional requirements beyond those rulings, see *State v. Harper, supra,* the order of the trial court suppressing the statement is clearly erroneous and must be reversed.

REVERSED.