STATE OF NEBRASKA, APPELLEE, v. REX A. MELTON, APPELLANT.
476 N.W.2d 842

Filed November 15, 1991.    No. 90-579.

Thomas M. Kenney, Douglas County Public Defender, and Brian S. Munnelly for appellant.

Robert M. Spire, Attorney General, and Linda L. Willard for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

PER CURIAM.

Rex A. Melton appeals from a jury verdict of guilty of motor vehicle homicide and a maximum sentence imposed of 20 months' to 5 years' imprisonment.

On July 30, 1989, Melton and his friend, Mark Padgett, were involved in a one-car accident. The car swerved; careened off the Interstate; rolled twice, crushing the passenger side of the roof; and came to rest on its top. Witnesses who stopped were able to assist in pulling the defendant out of the vehicle; however, they were not able to free Padgett, who had been pinned between the roof and the dash of the car. The police and rescue squad arrived shortly thereafter, finding Padgett deceased due to massive head injuries and Melton loud and belligerent. After conducting a part of the investigation, two police investigators went to visit Melton at the hospital. Witnesses to the accident had not been able to identify which occupant had been driving the vehicle involved in the accident.

The officers described Melton's injuries as minor bumps and bruises and his behavior as combative. He used profanity, slurred his words, and had to be restrained. The officers found it too difficult to interview Melton in this condition, so one of the officers went back to the accident site to finish his onsite investigation and the other stayed at the hospital to complete reports.

At around 9:30 that evening, approximately 5 hours after the accident, officers went to the hospital to again attempt an interview with Melton. Without administering *Miranda* warnings, the officers spoke with Melton and obtained a tape-recorded statement from him regarding the accident. Melton essentially told the police that he and Padgett had consumed "a lot" of alcohol, that Padgett had been driving, and that Padgett had "lost it, hit something and wrecked." Melton also stated that he would not have been driving, as his license had been suspended for third-offense drunk driving. An

officer testified that in his mind, Melton was free to leave.

Upon further investigation, the police came to a general conclusion that due to the nature of the damage to the vehicle and the extent of the injuries to the respective occupants of the car, Padgett simply could not have been the driver of the vehicle.

At the request of the police department, the hospital notified it when Melton was ready to be released, and upon the hospital's doing so, police approached Melton in his hospital room and asked that he accompany them downtown to make a statement. Once in the accident investigation office of the police station, officers read Melton his *Miranda* rights and obtained his signature on the standard written *Miranda* form. Although Melton was not under formal arrest, the officers did consider Melton to be in custody. Melton did not request an attorney.

The officers noted to Melton the differences between the witnesses' testimony and Melton's. Officer Richard McWilliams, in particular, commented that Padgett would want Melton to be honest about the accident; that as a man, it would be the right thing to do to tell the truth; and that to place blame on a dead person merely as a means of escaping responsibility would be a cowardly thing to do.

The officers then showed Melton pictures of the wreckage from which he and Padgett had been pulled, at which point Melton said that he did not remember who had been driving. Then, according to Officer McWilliams, "basically voluntarily he says 'Well, Mark Padgett was driving' . . . 'We switched drivers, and I took control of the car, and the next thing I remember was hitting a ditch.' " The officers then taped Melton's statement.

The defendant assigns as error that (1) the district court erred in overruling his motion to suppress statements he had made to the police while in the hospital, because the statements were made involuntarily and Melton had not been apprised of his *Miranda* rights, and (2) the court erred in failing to suppress statements he made at the police station, because, in spite of his receiving *Miranda* warnings, the statements were not "freely and voluntarily given."

As to the defendant's first assignment of error, regarding the

statement made to officers at the hospital, we affirm. The admission of a confession into evidence constitutes an independent determination by the trial court that the confession was voluntarily made; such determination will not be set aside on appeal unless the finding is clearly erroneous. *State v. Hunt*, 212 Neb. 214, 322 N.W.2d 621 (1982). Whether a statement, admission, or confession has been freely and voluntarily made depends upon the totality of the circumstances. *State v. Bodtke*, 219 Neb. 504, 363 N.W.2d 917 (1985).

The U.S. Supreme Court, in *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), held that the prosecution may not use statements, whether exculpatory or. inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, the Court meant questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

We have held that officers should give *Miranda* warnings prior to any questions asked at the hospital and failure to do so is a violation of the defendant's right against self-incrimination. Where a defendant was in custody at the time statements were elicited and the statements given by the defendant were responsive to direct questions asked by an officer, the admission of defendant's statements in a prosecution for theft of movable property was harmful error, since it could not be said beyond a reasonable doubt that admission of testimony as to the statements did not influence the verdict. See *State v. Thunder Hawk*, 212 Neb. 350, 322 N.W.2d 669 (1982).

The holdings in both *Miranda* and *Thunder Hawk* hinge, in application to this case, upon whether Melton was actually in custody when he was being questioned at the hospital by the police officers. In *Thunder Hawk*, the defendant was unquestionably in custody, as he had been formally arrested at the scene of an accident before being transported to the hospital for treatment.

This court defined custodial interrogation in *In re Interest of*

*Durand*, 206 Neb. 415, 293 N.W.2d 383 (1980). In that case, this court relied on *Rhode Island v. Innis*, 446 U.S. 291, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980), and stated that " '[t]he *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. . . .' " *In re Interest of Durand, supra* at 420, 293 N.W.2d at 386. In *State v. Thunder Hawk, supra* at 355, 322 N.W.2d at 672, we found custodial interrogation in that

> [t]he officer testified that the statements given by the defendant were responses to express questions asked by the officer. At the time the incriminating statements were made, the investigation had reached the accusatory stage and had clearly focused on the defendant. The interrogation was aimed at soliciting incriminating statements from the defendant upon whom the investigation focused.

We find that Melton was not in custody. He was admitted to the hospital for treatment, was not under formal arrest, and was questioned by officers during the routine course of an accident investigation. Although it is not dispositive, Melton did not incriminate himself in his statement to the police at the hospital, in which statement he denied being the driver of the vehicle involved in the accident, the same position he maintained at trial.

We affirm the district court's decision to overrule Melton's motion to suppress his hospital statement. We find no evidence to suggest that the finding was clearly erroneous.

We also affirm the district court's admission into evidence of Melton's statement made to police while in custody.

To be admissible in evidence, an accused's statement, confession, or admission must have been freely and voluntarily made and must not have been extracted by any direct or implied promise or inducement, no matter how slight. *State v. Hankins*, 232 Neb. 608, 441 N.W.2d 854 (1989); *State v. Hayes*, 229 Neb. 53, 424 N.W.2d 624 (1988). Similarly, a confession is not voluntary if it is obtained by any direct or implied promises, however slight. *State v. Hall*, 237 Neb. 169, 465 N.W.2d 150 (1991); *State v. Mayhew*, 216 Neb. 761, 346 N.W.2d 236 (1984).

We have essentially outlined, by way of negative implication,

the level to which the pressure of the situation must rise before being deemed inherently coercive under the totality-of-the-circumstances test.

We held that the confession of a 21-year-old defendant, who neither maintained he was nor was shown to be mentally susceptible to pressure, which in any case was not shown to have existed, was voluntary despite the defendant's assertion that the passage of 2½ hours from the time of his oral confession until the taping of a statement was completed was in and of itself coercive. See *State v. Tucker*, 215 Neb. 636, 340 N.W.2d 376 (1983).

We have held that a simple suggestion by the interrogating officer that defendant would "feel better" if he would "tell us everything" did not improperly influence defendant's custodial statement and, thus, did not render the statement involuntary. *State v. Norfolk*, 221 Neb. 810, 381 N.W.2d 120 (1986). This court, in *State v. Haynie, ante* p. 478, 476 N.W.2d 905 (1991), reiterated the totality-of-the-circumstances test to be applied in evaluating the voluntariness of custodial confessions. See, also, *Tippitt v. Lockhart*, 859 F.2d 595 (8th Cir. 1988), *cert. denied* 490 U.S. 1100, 109 S. Ct. 2452, 104 L. Ed. 2d 1007 (1989); *United States v. Grant*, 622 F.2d 308 (8th Cir. 1980).

The *Tippitt* court, quoting *United States v. Ferrara*, 377 F.2d 16 (2d Cir. 1967), *cert. denied* 389 U.S. 908, 88 S. Ct. 225, 19 L. Ed. 2d 225, defined the test: "[T]he test of voluntariness is whether an examination of all the circumstances discloses that the conduct of 'law enforcement officials was such as to overbear [the defendant's] will to resist and bring about confessions not freely self-determined * * *.' . . ." 859 F.2d at 597.

Our decision in *State v. Haynie, supra*, affirmed the conviction of a defendant where, during the course of police interrogation, the interrogating officer assured the defendant that the officer would indicate on the arrest report that the defendant had talked freely, without hesitation, and that that would probably be taken into consideration on how many cases would be filed against him. The majority found, under the totality-of-the-circumstances test, that Haynie had made a

rational and voluntary decision to confess and that the officer's "rather innocuous statement that his report would indicate that the defendant talked freely, which *probably* would be taken into consideration on how many cases were filed against him, did not coerce or overbear the defendant's free will." *Id.* at 490, 476 N.W.2d at 913.

We adhere to our decision in *Haynie*, finding that under the totality of these circumstances the evidence supports the district court's finding that Melton's statement was voluntary and not unduly coerced.

We affirm the district court's ruling in its entirety.

AFFIRMED.

WHITE, J., dissenting.

I adhere to my position in my dissent in *State v. Haynie, ante* p. 478, 476 N.W.2d 905 (1991), and therefore dissent from the majority here as to the confession produced at the police station.

Admittedly, Melton testified at the suppression hearing that he was not forced or coerced to make a statement; however, his claim of inducement is not abandoned. Officer McWilliams utilized an extreme and outrageous inducement tactic that resulted in an inherently coercive situation in order to obtain a specific response from Melton.

Furthermore, Officer McWilliams' conduct greatly surpassed a simple suggestion that honesty would be the best policy by the implicit suggestion that by not admitting that he was the operator of the car, Melton was less than a man and was, in fact, a coward.

Melton had just survived a violent and hideous crash in which his close friend had died scarcely 24 hours earlier. Melton was read his *Miranda* rights, but, as in *Brewer v. Williams*, 430 U.S. 387, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977), *Miranda* readings alone do not always protect suspects from law enforcement officers. In *Brewer*, the police had deliberately played on the emotions of a kidnapping and murder suspect whom they knew to be deeply religious. Despite promises to the suspect's attorney to the contrary, the officers induced the suspect to make several incriminating statements and eventually to direct the police to the body, by noting the

treacherous weather conditions, the fact that the defendant was the only person who knew where the body was located, and the fact that the parents of the little girl were entitled to have a Christian burial for her. *Id*.

Here, as in *Brewer*, law enforcement officials preyed upon a defendant's situational vulnerability to obtain a confession. Melton had stuck to his original story with consistency for 30 to 35 minutes before breaking down and admitting that he indeed had been the driver. Officer McWilliams exploited, for no other purpose than to obtain a confession, a man who was distraught, agonizing, and grieving over the loss of his friend.

Under the circumstances, dwelling repeatedly on responses Padgett would have wanted the defendant to give and what responses would be manly or cowardly was in and of itself inherently coercive and inappropriate. Despite his receiving the *Miranda* warnings, Melton's statements at the police station were involuntary. It seems the police already knew, as the evidence so indicated, who must have been driving. The extent of the damage to the vehicle and the extent of injuries to Melton and Padgett, respectively, all indicated that Melton could not have been the passenger.

The ruling on the police station confession should have been reversed because, as a matter of law, the officer's questioning was inherently coercive.