STATE OF NEBRASKA, APPELLEE, V. DALE GRANTZINGER, APPELLANT.
458 N.W.2d 461

Filed July 27, 1990.    No. 89-1291.

Stephen G. Lowe for appellant.

Robert M. Spire, Attorney General, and Donald E. Hyde for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Following a bench trial in Custer County Court, the defendant, Dale Grantzinger, was convicted of refusing to submit to a chemical test, in violation of Neb. Rev. Stat. § 39-669.08 (Reissue 1988); having no valid registration, in violation of Neb. Rev. Stat. § 60-325 (Reissue 1988); and failing to carry his driver's license, in violation of Neb. Rev. Stat. § 60-413 (Reissue 1988). The convictions were affirmed by the district court, and defendant appeals.

Defendant assigns as error (1) the failure of the trial court to

grant his motion to dismiss, (2) the failure of the trial court to grant his motion for a new trial, (3) the insufficiency of the evidence to support the convictions, and (4) the trial court's placing undue weight on defendant's alleged involuntary admission to the deputy sheriff that defendant was driving at the time of the incident in question. All four complaints refer to the sufficiency of the evidence. We affirm.

Tom Mayo, a Custer County deputy sheriff, testified that he was dispatched to the scene of a single-vehicle motorcycle accident in Custer County at approximately 8 p.m. on April 2, 1989. When the deputy arrived, he observed a female lying on her back on the west edge of the road and a male, whom he recognized to be Grantzinger, the defendant, behind her and on his knees. The female was having extreme difficulty breathing, and defendant had a bad cut over his right eye and was very bloody.

The deputy asked defendant if he was all right, and he nodded in the affirmative, and the deputy asked defendant if he had been driving, and he nodded in the affirmative. The defendant was then assisted up to the rescue unit by the deputy. The deputy observed that a strong odor of beer was on defendant's breath and that defendant was "very staggery and unsure of his footing," had poor balance, and exhibited a "slowness of speech." Upon being asked, the deputy testified, without objection by the defendant, that in his opinion the defendant was under the influence of alcoholic liquor at that time.

Mayo testified that he knew that defendant rode a motorcycle frequently and that he observed a wrecked blue BMW motorcycle at the scene, which motorcycle he associated with defendant. The deputy then checked the registration on the motorcycle and found that it had expired in 1977.

There was also testimony by Mayo, received without objection, that someone made a statement to him at the hospital that a "Mr. Bernt (sic) had been operating the motorcycle."

At around 9 p.m. at the Broken Bow hospital, Mayo testified, he observed the defendant lying on his back in the x-ray room. Mayo believed that defendant was unconscious or

asleep, as he would not acknowledge Mayo's presence. Mayo read the implied consent advisement to the defendant without receiving a response, and then Mayo requested a doctor to draw a blood sample. At that time, defendant flatly said, "[N]o." Mayo tried to explain to the defendant that he could lose his license if he did not give the blood sample; Mayo offered defendant the option of giving a urine sample, but defendant said he did not care what happened to him and would not give a sample.

The State offered testimony from James Bernt, a friend of the defendant's. Although the interrogation was sketchy, it is a fair summary of Bernt's testimony that defendant arrived at Bernt's home at around 2:30 p.m. on the day of the accident, riding a motorcycle and accompanied by his girl friend. They all apparently went to a bar in Mason City where they played pool and ordered a pizza, and the defendant drank some beer. Bernt, the defendant, and the defendant's girl friend then returned to the vicinity of Bernt's home around 5 or 5:30 p.m., at which time defendant stopped and said he was going to go see another friend and possibly would be back. Bernt said the defendant was on the motorcycle at the time he left, but when asked who was operating the motorcycle when it left, he answered: "When it left I — Truthfully, I don't know. We pulled away and went up the hill towards my house. And Tom knows where that's at, you know, I couldn't see him."

On further examination, Bernt was asked: "Did you previously tell the Deputy Sheriff, Tom Mayo, who's present in the courtroom, that Dale Grantzinger was operating the motorcycle?" He responded: "At that time, yes, that's — I — I — You know, I just assumed that he was 'cuz he'd been on it, you know, that day, all day. And I know Dale, he's, you know, his motorcycle's his motorcycle. But as far as seeing him leave, I can't, you know, I can't tell ya."

Finally, the State offered the testimony of H.F. Kennedy that he had sold or traded a blue 1973 BMW motorcycle, which was the motorcycle about which there had been testimony that day, to defendant sometime during the end of March 1989. Following this testimony, the State rested its case.

According to the defense attorney's statement in the record,

defendant's girl friend died as a result of this accident and was not available to testify. Defendant's motion to dismiss for failure of proof was overruled.

Only the testimony of defendant was presented in his defense. Basically, he stated that he had purchased the BMW motorcycle from Kennedy and that he had been driving it the afternoon of the day of the accident when he went to Bernt's, then to Mason City, and then back to Bernt's. However, he denies any recollection of the accident and any conversation with Deputy Mayo, but has a hazy recollection of being on the county road described by Mayo.

In its judgment order finding the defendant guilty, the trial court made detailed findings of fact and conclusions of law. Included within these findings was a discussion as to the significance to be attached to the affirmative head gesture made by the defendant to the deputy sheriff. The court said, in part: "Although it cannot be said that the admission was made freely, intelligently, and voluntarily, the fact that it was made while under the stress (and shock, if not excitement) of the accident is some assurance of its truthfulness." This statement by the court is apparently what prompted defendant's argument that the court placed undue weight on the defendant's involuntary admission to the deputy sheriff. However, as will later appear in our discussion, consideration of that argument is unnecessary.

In reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *State v. Broussard, ante* p. 809, 457 N.W.2d 457 (1990); *State v. Jones, ante* p. 1, 453 N.W.2d 447 (1990).

On a claim of insufficiency of the evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *State v. Reynolds, ante* p. 662, 457 N.W.2d 405 (1990).

On a criminal defendant's motion to dismiss for insufficient evidence of the crime charged against the defendant, the State is entitled to have all its relevant evidence accepted as true, the benefit of every inference reasonably drawn from the evidence, and every controverted fact resolved in its favor. *State v. Brown, ante* p. 374, 455 N.W.2d 547 (1990).

Factual findings of a judge who serves as the trier of fact in a criminal case will not be disturbed on appeal unless clearly wrong. *State v. Trackwell, ante* p. 845, 458 N.W.2d 181 (1990); *State v. Diesing,* 231 Neb. 132, 435 N.W.2d 190 (1989).

In order to establish count I, refusal to submit to testing, it was necessary for the State to prove that the defendant had been arrested for an offense arising out of acts alleged to have been committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic liquor; that the officer had reasonable grounds to believe that the defendant was driving or was in the actual physical control of a motor vehicle upon a public highway in this state while under the influence of alcoholic liquor; and that after being requested to do so, had refused to submit to such test. § 39-669.08.

This raises the question as to whether defendant had been lawfully arrested at the time he refused to give a body fluid sample for testing. The arrest of defendant was made at the hospital. At that time, the arresting deputy had been at the scene of the accident, had seen a wrecked motorcycle beside the road, had observed the woman lying on the ground and the defendant on his knees in the vicinity, knew that defendant rode a motorcycle "a lot," had been told at the hospital that defendant was the driver of the motorcycle, and had made observations that defendant carried a strong odor of alcohol on his breath and that defendant was "very staggery and unsure of his footing."

In order to arrest a person for suspected driving while intoxicated, it is only necessary that the arresting officer have knowledge, based on information reasonably trustworthy under the circumstances, which justifies a prudent belief that a suspect has committed a crime. See *State v. Wickline,* 232 Neb. 329, 440 N.W.2d 249 (1989). Based on the deputy's observation

that a single-vehicle accident had occurred; the facts that a wrecked motorcycle which was associated with the defendant was found in the vicinity, that further observation disclosed that the defendant had obviously been involved in some type of accident, and that information from an independent witness or witnesses revealed that the defendant was the driver of the motorcycle involved in the accident; and the deputy's observations as to the alcohol on the breath of the defendant and the conduct suggestive of intoxication on the part of defendant, probable cause existed for the deputy to believe that the defendant was operating a motor vehicle while under the influence of intoxicating liquor.

There was probable cause, even disregarding the head gesture, for Deputy Mayo to place the defendant under arrest for operating a motor vehicle while under the influence of intoxicating liquor and to have "reasonable grounds to believe that [defendant] was driving or was in the actual physical control of a motor vehicle upon a public highway . . . while under the influence of alcoholic liquor." § 39-669.08(2).

The remaining two counts relate to the defendant's failure to have a proper registration for his vehicle and failure to have a valid driver's license on his person on April 2, 1989. The evidence is undisputed that defendant was driving a motor vehicle earlier in the day on April 2. It is equally persuasive from further observations made by Mayo during his investigation at the hospital and from his testimony that defendant had no driver's license on his person and that the vehicle he was driving was not properly registered on the day of the alleged offenses.

Section 60-325 requires that no person shall operate a motor vehicle unless such vehicle shall at all times carry upon it the registration certificate. It goes without saying that such certificate must be current and valid. In the same manner, § 60-413 requires that every person shall at all times while operating a motor vehicle have in his or her possession a valid license card.

Defendant's assignments of error are without merit, and the judgment of the district court, affirming his convictions in the county court, is affirmed.

AFFIRMED.