STATE OF NEBRASKA, APPELLEE, V. MARC M. FELLMAN,
APPELLANT.

464 N.W.2d 181

Filed January 4, 1991.    No. 89-1408.

James Martin Davis and Martin J. Kushner for appellant.

Robert M. Spire, Attorney General, and William L. Howland for appellee.

Hastings, C.J., Boslaugh, White, Caporale, Shanahan, Grant, and Fahrnbruch, JJ.

Caporale, J.

## I. INTRODUCTION

This is yet another case arising from the attempt to place on the 1986 general election ballot an initiative measure to amend the state Constitution so as to permit a state-run lottery. See, *State v. Radcliffe*, 228 Neb. 868, 424 N.W.2d 608 (1988); *State v. Pappas*, 228 Neb. 861, 424 N.W.2d 604 (1988); *State v. Katzman*, 228 Neb. 851, 424 N.W.2d 852 (1988); *State v. Monastero*, 228 Neb. 818, 424 N.W.2d 837 (1988).

Following a bench trial, the defendant in this case, Marc M.

Fellman, was adjudged guilty of aiding, abetting, procuring, or causing another to falsely swear to a signature on an initiative petition, in violation of Neb. Rev. Stat. §§ 32-705 (Cum. Supp. 1986) and 32-713 (Reissue 1984). He was thereafter sentenced to 2 years' probation, fined $2,000, and ordered to complete 300 hours of community service. His six assignments of error on appeal may be summarized as claiming that (1) §§ 32-705 and 32-713 are unconstitutional in a variety of respects, (2) the trial court erred in certain evidential rulings, (3) there was insufficient evidence to support the conviction, and (4) the trial court erred in failing to grant a new trial for newly discovered evidence. We affirm.

## II. FACTS

On July 2, 1986, Fellman, a part owner of an Omaha, Douglas County, Nebraska, business known as Lottery Consultants of Nebraska, Inc., met in Lincoln, Lancaster County, Nebraska, with a group of models who had been hired to circulate lottery initiative petitions in the latter city. These models returned their petitions to Fellman at about 4 p.m. the same day. Fellman had two of the models, Vicki Shoemaker and Anne Steyer, sign this group of petitions as the circulators thereof, despite the fact that they had not circulated all they so signed. Nor were these signatures notarized in the presence of Shoemaker or Steyer.

At trial, Shoemaker identified two documents as petitions that Fellman had her sign as circulator on July 2, 1986. These documents now bore Kimberly Peters' signature as circulator over Shoemaker's signature, which had been "whited out," or obliterated, apparently with typewriter correcting fluid.

Steyer identified four documents as petitions Fellman had her sign as circulator, again on July 2, 1986. At trial, three of these documents also bore Peters' signature as circulator over Steyer's signature, which had been similarly whited out.

Lisa Harley, another model who circulated petitions on July 2, 1986, also identified a document as one she had circulated but had not signed. At trial, this document bore Peters' July 3, 1986, signature as circulator.

Angelia Rohwer circulated petitions given to her at Fellman's

Omaha business address on July 2 and 3, 1986, and returned them to Fellman's place of business on July 3, 1986, leaving the circulator signature line unsigned. At trial, Rohwer identified one of these petitions, which then bore Peters' signature as circulator.

Fellman also had asked Michelle Penix to distribute lottery petitions. She returned those she had circulated to Fellman in a south Omaha building and signed them as circulator. At trial, Penix identified two documents as petitions she had circulated and so signed, which then bore Peters' signature as circulator.

On July 3, 1986, Kathy Paradise, a part-time employee of Walter H. Radcliffe, one of the petition drive organizers, was working on lottery-related activities in Lincoln. Fellman, carrying a manila envelope, went to the office where Paradise was working, and she showed him to then Sen. James E. Pappas' office in the State Capitol Building.

Peters, who served as Pappas' administrative assistant, had become a bonded circulator and had told Radcliffe that she would sign, as circulator, lottery petitions that she had in fact not circulated. Radcliffe telephoned Peters on July 3, 1986, saying that he was sending someone over with some petitions for her to so sign. She remembered that Paradise and a man she could not identify brought petitions to Pappas' office for her to sign as circulator and to be notarized. Peters signed petitions which had been circulated but not signed by a circulator and used typewriter correcting fluid to white out the circulator's signature on other petitions, writing in her own name as circulator. She specifically admitted signing as circulator the petitions previously identified by Shoemaker, Steyer, Harley, Rohwer, and Penix.

Allen J. Beermann, Secretary of State of the State of Nebraska, testified that the petitions identified by Shoemaker, Steyer, and Harley were among those filed with his office shortly before closing time on July 3, 1986.

### III. ANALYSIS
#### 1. CONSTITUTIONAL ISSUES

In connection with the first summarized assignment of error, Fellman makes a multifaceted constitutional challenge. He

asserts that the scheme embodied in Neb. Rev. Stat. §§ 32-705 through 32-713 (Reissue 1984 & Cum. Supp. 1986) is overbroad, thereby violating the 1st, 5th, 9th, and 14th amendments to the Constitution of the United States; that the scheme restricts and chills the initiative process, thereby violating the rights guaranteed by Neb. Const. art. I, §§ 5, 19, and 22, and art. III, §§ 1, 2, and 4; and that the scheme is vague, thereby violating the due process clauses of the 5th and 14th amendments. Before the analysis of those constitutional issues can proceed, we must determine whether Fellman has standing to mount such attack.

### (a) Standing

To have standing to challenge the federal or state constitutionality of a statute, the contestant must be one who is, or is about to be, adversely affected by the language in question and must show that as a consequence of the alleged unconstitutionality, the contestant is deprived of a constitutionally protected right. *State v. Crowdell*, 234 Neb. 469, 451 N.W.2d 695 (1990); *State v. Monastero*, 228 Neb. 818, 424 N.W.2d 837 (1988); *In re Estate of West*, 226 Neb. 813, 415 N.W.2d 769 (1987).

The defendants in *Monastero, supra*, made many of the same challenges to this state's statutory scheme for placing initiative measures on a general election ballot. This court held therein that inasmuch as the defendants had been charged only with violating the false swearing provisions of § 32-713, they had standing to challenge only those provisions of that statute. Thus, Fellman has standing to challenge only those provisions of §§ 32-705 and 32-713 which relate to false swearing.

Accordingly, the relevant portion of § 32-705, which includes the warning provision, reads:

Every sheet of every petition mentioned in sections 32-702 to 32-704 containing signatures shall have upon it and below the signatures an affidavit in substantially the following form:

STATE OF NEBRASKA )

) ss.

COUNTY OF_____ )

_____, being first duly sworn,
*Name of Circulator*

deposes and says that he or she is the circulator of the foregoing petition containing _____ signatures . . . that each person whose name appears on the petition sheet personally signed the petition in the presence of affiant . . . . Every sheet of every petition mentioned in sections 32-702 to 32-704 containing signatures shall have upon it and above the signatures a statement in substantially the following form:

WARNING: Any person . . . who falsely swears to any signature upon any such petition . . . shall be guilty of a felony and shall, upon conviction thereof, be punished by a fine not exceeding five hundred dollars, by imprisonment in the Department of Correctional Services adult correctional facility not exceeding two years, or by both such fine and imprisonment.

The pertinent part of § 32-713 is the penalty provision, which states that any "person who shall falsely swear to any signature upon any such petition . . . shall be guilty of a Class IV felony." Neb. Rev. Stat. § 28-105 (Reissue 1985) states that such a felony is punishable by imprisonment for a period of up to 5 years, a fine of $10,000, or both such imprisonment and fine.

Notwithstanding the language of § 32-705, every petition involved in this case contained a provision which read, in pertinent part: "WARNING ANY PERSON . . . WHO SHALL FALSELY SWEAR TO ANY SIGNATURE UPON ANY SUCH PETITION . . . SHALL BE GUILTY OF A CLASS IV FELONY UPON CONVICTION THEREOF."

### (b) Overbreadth and Initiative Rights

*State v. Monastero, supra,* determined that prohibiting one from falsely swearing that she or he circulated an initiative petition and that each signature on the petition was signed in the circulator's presence is not overbroad. The same reasoning compels the conclusion that neither does prohibiting one from falsely swearing impinge on the various rights of initiative embodied in the Constitution of this state.

### (c) Vagueness

Fellman claims "[t]he entire statutory scheme involved in

this prosecution is impermissibly vague. It is vague as to definitions, it is vague as to what conduct is proscribed, and it is vague as to penalties." Brief for appellant at 22.

The *Monastero* court dealt directly with claims of vagueness in §§ 32-705 and 32-713 as those statutes relate to the crime of false swearing and resolved the issue adversely to Fellman:

By reading §§ 32-713 and 32-705 together, a petition circulator has adequate and fair notice of the subject matter of the falsity regarding a petitioner's signature placed on an initiative petition or the conduct condemned and prohibited at the peril of punishment.

. . . .

Thus, we conclude and hold that *falsely*, as used in § 32-713, means deliberately or intentionally and refers to an act, "to swear," done with the actor's knowledge. *Falsely*, as used in § 32-713, specifies the element of deliberate or intentional untruth or deceit regarding a circulator's swearing to a petitioner's signature on an initiative petition, that is, the circulator's false swearing must be an intentional or deliberate act.

Section 32-713, defining the crime of "false swearing" in reference to an initiative petition, is not unconstitutional for vagueness.

(Emphasis in original.) *State v. Monastero*, 228 Neb. 818, 834, 836-37, 424 N.W.2d 837, 848-49 (1988).

However, Fellman's argument concerning the vagueness allegedly resulting from the conflicting, or repugnant, language in the warning provision of § 32-705 and the penalty provision of § 32-713 requires closer analysis.

Review of the evolution of §§ 32-705 and 32-713 discloses how the repugnancy came into existence. In 1913, the precursor to § 32-713, which defined the crime of and punishment for false swearing, stated:

Any person . . . who shall falsely certify to any signature upon any such petition . . . shall be deemed guilty of a felony and upon conviction thereof shall be punished by a fine not exceeding five hundred dollars, or by imprisonment in the penitentiary not exceeding two years, or by both such fine and imprisonment.

Rev. Stat. § 2349 (1913). Section 32-705 did not contain a warning provision until 1965, when the statute was amended to read, in pertinent part:

> Every sheet of every petition mentioned in sections 32-702 to 32-704 containing signatures shall have upon it and above the signatures a statement in substantially the following form:
>
> WARNING. Any person . . . who shall falsely swear to any signature upon any such petition . . . shall be deemed guilty of a felony and shall, upon conviction thereof, be punished by a fine not exceeding five hundred dollars, or by imprisonment in the Nebraska Penal and Correctional Complex not exceeding two years, or by both such fine and imprisonment.

§ 32-705 (Cum. Supp. 1965).

Thus, the relevant language in § 32-705 had been made consistent with the pertinent language of § 32-713, the latter defining the crime of and punishment for false swearing. See § 32-713 (Cum. Supp. 1965).

This parallel between the warning provision of § 32-705 and the relevant language of § 32-713 continued until 1977, when the criminal code was revised. During the 1977 revision, the penalty language of § 32-713 was changed to the following: "Any person . . . who shall falsely swear to any signature upon any such petition . . . shall be guilty of a Class IV felony." § 32-713 (Supp. 1977). The classification of felonies and their penalties was created in 1977 as well. See § 28-105 (Supp. 1977). The Class IV felony, which encompassed the crime of false swearing, was the lowest class of felony created, providing for the penalty described earlier. No change was made to the warning provision of § 32-705 at this time, thus creating the repugnancy which continued until 1988, when the Legislature deleted any reference to punishment in the warning language of § 32-705. See 1988 Neb. Laws, L.B. 716.

While repeals of statutes by implication are not favored and a statute will not be considered so repealed unless the repugnancy between the new enactment and the former statute is plain and unavoidable, where such a repugnancy exists, the new enactment will be deemed to have repealed the former

statute by implication. *State v. Retzlaff*, 223 Neb. 811, 394 N.W.2d 295 (1986); *State v. Roth*, 222 Neb. 119, 382 N.W.2d 348 (1986). However, a construction of a statute which, in effect, repeals another statute will not be adopted unless such a construction is made necessary by the evident intent of the Legislature. *State v. Roth, supra; Sarpy Co. Pub. Emp. Assn. v. County of Sarpy*, 220 Neb. 431, 370 N.W.2d 495 (1985). Nonetheless, a legislative act which is complete in itself and is repugnant to or in conflict with a prior law repeals the prior law by implication to the extent of the repugnancy or conflict. *American Fed. S., C. & M. Emp. v. County of Lancaster*, 200 Neb. 301, 263 N.W.2d 471 (1978).

The defendant in *Retzlaff* had pled guilty to motor vehicle homicide in violation of Neb. Rev. Stat. § 28-306 (Reissue 1985), which provided that one unintentionally causing the death of another while operating a motor vehicle in a reckless manner, contrary to the provisions of Neb. Rev. Stat. § 39-669.01 (Reissue 1984), committed a Class IV felony. Such a felony was then punishable as in this case, and Retzlaff was imprisoned for a period of 3 years. He thereafter moved for vacation of his sentence, claiming that he should have been sentenced under the provisions of Neb. Rev. Stat. § 39-669.20 (Reissue 1984), which provided that one convicted of motor vehicle homicide was to be fined not more than $500, imprisoned in the county jail for not more than 6 months, or be both so fined and imprisoned. Section 28-306 was enacted in 1977 as part of the revision of the criminal code. Section 39-669.20, on the other hand, had last been amended in 1972. We concluded that because of the plain and unavoidable repugnancy between the two sections and the specificity with which § 28-306 dealt with motor vehicle homicide, its later enactment impliedly repealed those provisions of § 39-669.20 which related to motor vehicle homicide, and we thus affirmed the district court's refusal to vacate Retzlaff's sentence.

The warning provision of § 32-705 and the penalty provision of § 32-713 as they read at the time in question were plainly and unavoidably repugnant to each other. While neither statute was of more specific application than the other, there is no suggestion that the Legislature intended to make the offense of

falsely swearing to signatures on an initiative petition a crime without a penalty. We must therefore conclude that the 1977 revision of § 32-713 repealed by implication the penalty provision then contained in § 32-705, a conclusion which, as evidenced by the warning language used, the drafter of the initiative petitions in question appears to have shared. The Legislature's 1988 removal of any reference to punishment from the warning provision of § 32-705 merely confirmed what it had done by implication in its 1977 change to the penalty provision in § 32-713.

### 2. EVIDENTIAL RULINGS

That brings us to the remaining summarized assignments of error, in connection with the first of which, that is, the second summarized assignment, Fellman contends that the trial court committed reversible error by admitting certain evidence over his objection. However, in each of the six instances concerning which Fellman complains, the trial court chose not to rule on Fellman's objection but to instead inform the parties that it would only consider properly admissible evidence. Indeed, the trial court's memorandum recites that it "did not consider any inadmissible evidence" in reaching its decision.

While Fellman was entitled to a ruling, he made no request for such, electing instead to allow the trial court's preference not to rule to stand unchallenged. The longstanding axiom is that a party who fails to insist upon a ruling to a proffered objection waives that objection. *State v. McClanahan*, 194 Neb. 261, 231 N.W.2d 351 (1975).

Moreover, in a case tried to a court without a jury, there is a presumption that the court below acted precisely as it says it did, i.e., that in reaching its decision it considered only evidence that is competent and relevant. *State v. Zaritz*, 235 Neb. 599, 456 N.W.2d 479 (1990).

### 3. SUFFICIENCY OF EVIDENCE

The third summarized assignment of error challenges the trial court's implicit conclusion that the evidence supports the adjudication of guilt.

Neb. Rev. Stat. § 28-206 (Reissue 1989) provides that one "who aids, abets, procures, or causes another to commit any

offense may be prosecuted and punished as if he were the principal offender." We have said that aiding and abetting involves some participation in the criminal act and must be evidenced by some word, act, or deed. No particular acts are necessary, nor is it necessary that any physical part in the commission of the crime is taken or that there was an express agreement therefor. Mere encouragement or assistance is sufficient. *State v. Johnson, ante* p. 831, 464 N.W.2d 167 (1990); *State v. Schreck,* 224 Neb. 650, 399 N.W.2d 830 (1987). However, aiding and abetting involves some participation in the criminal act or some conscious sharing in the criminal act, as in something that the accused wishes to bring about, in furtherance of the common design, either before or at the time that the criminal act is committed, and it is necessary that he seeks by his action to make it succeed. *State v. Douglas,* 217 Neb. 199, 349 N.W.2d 870 (1984); *State v. Alvarez,* 189 Neb. 276, 202 N.W.2d 600 (1972).

It is also the rule that in reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, whose findings must be sustained if, taking the view most favorable to the State, there is sufficient evidence to support them. *State v. Ayres, ante* p. 824, 464 N.W.2d 316 (1990); *State v. Grantzinger,* 235 Neb. 974, 458 N.W.2d 461 (1990). Moreover, on a claim of insufficiency of the evidence, the Supreme Court will not set aside a guilty verdict in a criminal case where such verdict is supported by relevant evidence. Only where evidence lacks sufficient probative force as a matter of law may the Supreme Court set aside a guilty verdict as unsupported by evidence beyond a reasonable doubt. *Id.* Additionally, factual findings of a judge who serves as the trier of fact in a criminal case will not be disturbed on appeal unless clearly wrong. *Id.* Finally, a criminal conviction may be based on circumstantial evidence. *State v. Zitterkopf, ante* p. 743, 463 N.W.2d 616 (1990); *State v. Oldfield, ante* p. 433, 461 N.W.2d 554 (1990).

Keeping these standards in mind, it cannot be said that Fellman's conviction is not supported by sufficient evidence.

The evidence was such that an impartial finder of fact could find beyond a reasonable doubt that Fellman was part of an organized effort to garner initiative petition signatures and that he knowingly secured Peters' fraudulent signature as circulator of the several petitions admitted into evidence. That Peters failed to remember Fellman is irrelevant, for the appropriate standard makes Fellman's assistance in the delivery of the petitions to Peters for false swearing on July 3, 1986, sufficient to establish that he consciously participated in procuring her fraudulent signatures and did thereby aid, abet, procure, or cause Peters to swear falsely.

### 4. NEW TRIAL MOTION

Finally, in the fourth summarized assignment of error, Fellman claims he should have been granted a new trial because of newly discovered evidence. He asserts that Radcliffe, who had similar charges pending against him during Fellman's trial, is now available to testify on Fellman's behalf and that had the motion been granted and Radcliffe called to testify, the evidence "might have changed the outcome of the trial." Brief for appellant at 29. In resolving this issue, it must be remembered that the newly discovered evidence offered in support of a motion for new trial must be so potent that, by strengthening the evidence already offered, a new trial would probably result in a different verdict; the newly discovered evidence must be relevant and credible and not merely cumulative. *State v. Batiste,* 231 Neb. 481, 437 N.W.2d 125 (1989). Such a motion is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *Id.*

In support of the claim that he was entitled to a new trial, Fellman offered not Radcliffe's but his own affidavit, reciting that Radcliffe was out of town during Fellman's trial and unavailable as a witness because of Radcliffe's fifth amendment rights, that Radcliffe could now be called to testify that Fellman knew nothing of the arrangement between Radcliffe and Peters, that Fellman had not met or talked with Peters prior to trial, that Radcliffe asked Fellman to take an envelope to Pappas' office and deliver it to his secretary without further

identification or instruction, and that Radcliffe had assured Fellman everything he was being asked to do was legal. Fellman obviously could not know, of his own knowledge, that Radcliffe would have asserted his fifth amendment rights had Fellman called him as a witness, nor could he know, of his own knowledge, what Radcliffe's testimony would be were he to testify. It thus cannot be said that it was an abuse of discretion on the part of the trial court to deny Fellman a new trial.

### IV. DECISION
Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.