STATE OF NEBRASKA, APPELLEE, V. MICHAEL E. HARRIS,
APPELLANT.

513 N.W.2d 46

Filed March 15, 1994.    No. A-93-219.

Thomas M. Kenney, Douglas County Public Defender, and Kelly S. Breen for appellant.

Don Stenberg, Attorney General, and Delores Coe-Barbee for appellee.

 

CONNOLLY, HANNON, and WRIGHT, Judges.

WRIGHT, Judge.

Michael E. Harris was convicted of assault in the first degree and use of a firearm to commit a felony. On December 1, 1992, this court dismissed Harris' appeal for lack of jurisdiction because the notice of appeal was filed before his sentences had been imposed. *State v. Harris*, 1 NCA 2397 (1992). On February 22, 1993, Harris filed an application for new trial pursuant to Neb. Rev. Stat. § 29-2101(5) (Reissue 1989) on the basis of newly discovered evidence material to his defense. The trial court overruled his motion for new trial, and he appeals.

## SCOPE OF REVIEW

■ A motion for new trial on the basis of newly discovered evidence is addressed to the discretion of the trial court, and unless an abuse of discretion is shown, the trial court's determination will not be disturbed. *State v. Boppre*, 243 Neb. 908, 503 N.W.2d 526 (1993); *State v. Richter*, 240 Neb. 913, 485 N.W.2d 201 (1992).

## FACTS

On November 6, 1991, a jury returned guilty verdicts against Harris on the charges of first degree assault and use of a firearm to commit a felony. Harris' motion for new trial filed on February 22, 1993, cited a number of arguments, but those pertinent to this appeal allege that the verdict was contrary to the law because of newly discovered evidence which could not have been discovered with reasonable diligence at the time of the trial. Harris claims that Martize Williams has now confessed to the crimes for which Harris was convicted—first degree assault on Tony Williams and use of a firearm to commit a felony.

We summarize the two versions of the facts as they appear in the record.

### VERSION NUMBER ONE

On the evening of May 27, 1991, Tony Williams, Michael Scarborough, Mercedes Bryant, Jamie Baltimore, and David Griffin were driving around Omaha in Scarborough's 1975 Chevrolet Caprice Classic. At approximately 11 p.m., they

drove into the parking lot on the north side of Dailey's Package Liquor Store at 30th and Wirt Streets. Tony Williams, Scarborough, Baltimore, and Griffin got out of the car and walked to the parking lot on the south side of the liquor store, while Bryant remained in the car. As the men were walking to the south parking lot, a man in a maroon Dodge Colt spoke to Scarborough. The Colt then pulled away. Moments later, the Colt, driven by Steve Chambers, and a black Chevrolet Blazer, driven by Harris, simultaneously pulled up in front of the liquor store. Martize Williams and a man named "Delano" were with Chambers. Several males got out of the Colt and the Blazer, and two individuals walked around the side of the building to the back of the liquor store. Dushuan Hogan and Gerard Kimsey were passengers in the Blazer.

The two men who had gone to the back of the liquor store then approached Scarborough in the south parking lot. Words were exchanged, and one of the men in the group, apparently Chambers, swung at Scarborough and missed. Another person swung at Scarborough, who again ducked out of the way. Scarborough then ran past the front of the liquor store and across the street to the Stage II bar.

After Scarborough ran from the area, Harris approached Griffin and Tony Williams and said, "I know you guys don't think you're going to jump in" to help Scarborough. Williams said Harris then reached into his pants as if he was going to pull out a gun. Williams began walking toward Scarborough's car.

Griffin testified that Harris was wearing a brown glove and had the gun tucked inside his pants. Harris told Griffin that he should not run away. Baltimore then pulled Scarborough's car beside Griffin and told him to get in because Harris had a gun. Instead of getting in the car, Griffin began to run down Wirt Street and eventually ended up at the Spencer housing projects.

Tony Williams, who was still in the south parking lot, testified that as he began to walk toward Scarborough's car, he saw Harris walking toward him. Williams then ran across 30th Street in an attempt to get to a pickup owned by Darryl Roach. As Williams grabbed the back end of the pickup, Roach "took off," and Williams slipped and fell to the ground. Williams testified that when he looked up, he saw Harris standing on the

sidewalk across 30th Street. Williams then ran toward Scarborough's car, which at that time was being driven by Baltimore, but Harris chased him. When Harris was within 10 to 15 yards of Williams, Harris drew the gun and fired three to six shots. Williams was shot in the left side of the abdomen. The bullet exited through the front side of his stomach, creating two wounds. Baltimore left the car and went to Williams, who was lying next to the curb on the northeast corner of 30th and Wirt Streets.

Baltimore, Bryant, and Roach all testified that they witnessed the shooting. Roach testified that as he was pulling away in his pickup, he saw Harris fire a gun at Tony Williams. He said he recognized Harris "from the streets." Bryant, who was in the backseat of Scarborough's car, testified that she saw Tony Williams attempt to get in Roach's pickup. When the pickup pulled away without him, Williams ran across the street toward Scarborough's car. Bryant saw Harris fire at least three shots at Williams' left side. Bryant testified that Harris, who was wearing dark-colored clothing, got into the black Blazer after the shooting. Baltimore stated that he saw Harris chase Tony Williams across 30th Street and that he saw Harris fire at least five shots at Williams. He said that Harris, who was wearing a black T-shirt and "stone-washed" gray jeans, ran in a northerly direction after the shooting, but Baltimore did not see exactly where he went.

### Version Number Two

Hogan testified that just prior to the shooting, he and Harris were leaving the parking lot when he saw "Tez," Martize Williams, get in and out of a car and then run toward the victim. Martize Williams fired four shots at Tony Williams, who fell to the ground. Hogan said Harris was driving the Blazer away from the scene when the shots were fired.

Chad Dailey, the liquor store owner, testified that when he saw Harris standing in the parking lot, he told Harris to move his Blazer because it was parked at an angle. Dailey said Harris was standing next to him when the shooting occurred.

Harris testified that he parked in front of the liquor store to buy a beer. Hogan stayed with the Blazer, and Kimsey got out of

the Blazer to go to the bathroom at the back of the building. After Harris and Kimsey came back to the Blazer, Kimsey approached Scarborough, who was with Tony Williams and another party talking in the south parking lot. Harris said he had been talking to Dailey when a fight started, and he ran to move the Blazer out of the way. As he pulled the Blazer out of the parking lot, he turned around in his seat, saw a man with a gun, and heard one shot. He heard additional shots as he pulled into traffic. As he looked back, he saw the victim grab his waist and fall to the ground. Harris described the gunman as wearing tan pants and a dark shirt, with his hair sticking straight up in the air, cut "higher" than Harris', and shaved on the sides. He recognized the gunman as Martize Williams when he saw Williams in jail.

Officer Bruce Farrell, the first police officer to arrive at the scene, found Tony Williams lying 10 to 15 feet from the curb at 30th and Wirt Streets. He obtained a physical description and a description of the clothing of the person who had shot Williams. Another officer received information from an anonymous party that the person who shot Williams had left the scene in a black Chevrolet Blazer with license plates from county "29," and the officer knew that Harris had such a vehicle. The police subsequently stopped Harris, Hogan, and Kimsey in the Blazer at 24th and Parker Streets. Officers noted that Harris was dressed in a black T-shirt and black pants.

## MOTION FOR NEW TRIAL

Attached to Harris' motion for new trial filed February 23, 1993, was the affidavit of Martize Williams, in which Williams states that he is currently incarcerated at the Lincoln Correctional Center and that on May 27, 1991, he was a passenger in a maroon Dodge Colt with three other individuals—Chambers, Delano, and Kimsey. Martize Williams stated that they drove by Dailey's Package Liquor Store on 30th Street. When Martize Williams' group entered the parking lot, they encountered other people, who were drinking, and exchanged some words. Martize Williams' group left to search for Harris, who was driving a black Blazer. When they found Harris, both vehicles were driven back to Dailey's

parking lot. Kimsey, Chambers, Delano, and Martize Williams got out of the Colt and exchanged words again with the people they had seen earlier in the parking lot, while Harris stayed in the Blazer. Martize Williams stated that he pulled out his gun, a .38 caliber; chased Tony Williams; and shot him from across the street. Immediately after the shooting, Martize Williams got into the Colt and drove off. Martize Williams stated that just before the shooting, he noticed Harris had gotten out of his black Blazer and gone into Dailey's Package Liquor Store. Harris was departing the store as the shooting took place. Martize Williams' affidavit stated that Harris did not participate or conspire in the shooting of Tony Williams.

## ANALYSIS

Section 29-2101 provides:

> A new trial, after a verdict of conviction, may be granted, on the application of the defendant, for any of the following reasons affecting materially his substantial rights: . . . (5) newly discovered evidence material for the defendant which he could not with reasonable diligence have discovered and produced at the trial . . . .

Where a motion for new trial is based on newly discovered evidence, the rule is well established that the newly discovered evidence must be of such a nature that if it had been offered and admitted at the former trial, it probably would have produced a substantially different result. It must actually be newly discovered and may not be evidence which could have been discovered and produced at trial with reasonable diligence. *State v. Boppre*, 243 Neb. 908, 503 N.W.2d 526 (1993).

We address only Harris' contention concerning newly discovered evidence because any other basis for a motion for new trial is not timely. An application for new trial shall, except for the cause of newly discovered evidence which could not with reasonable diligence have been discovered and produced at the trial, be filed within 10 days after the verdict was rendered unless unavoidably prevented. A motion for new trial not filed in conformity with the statutory requirements as to time may not be considered by an appellate court on review. *State v. Thompson*, 244 Neb. 375, 507 N.W.2d 253 (1993).

Harris asserts that he could not present Martize Williams' testimony at trial because Williams, if called to testify, would have invoked his Fifth Amendment right against self-incrimination and refused to testify. The record from the trial supports this contention. At trial, the State made an oral motion in limine asking that Harris not be allowed to call Martize Williams to testify because Williams had a murder charge pending against him and because Williams planned to invoke the Fifth Amendment. The court sustained the motion and ordered that Williams be heard in camera concerning his Fifth Amendment claim. The court held that if Williams asserted the right not to incriminate himself, the State would not be allowed to comment upon Harris' failure to call Williams, and Williams would be excluded as a witness.

At the in camera hearing, when Martize Williams was asked if he was at the scene of the incident on May 27, 1991, Williams invoked the Fifth Amendment. The court then quashed the subpoena issued to Williams and stated that the damage that would be caused by the potential adverse inferences drawn by the jurors was too great to allow Williams to invoke the Fifth Amendment privilege in the jury's presence. The State was ordered not to comment or argue that the jury should draw any inference regarding the defendant's failure to call Martize Williams or the fact that Williams did not appear as a witness.

At trial, the evidence conflicted, with some witnesses testifying that Harris had shot the victim and other witnesses testifying that Harris did not shoot the victim. The victim, Mercedes Bryant, and Darryl Roach all identified Harris as the gunman. Harris and Dushuan Hogan testified that Martize Williams had been the person who shot Tony Williams. Chad Dailey and another witness said Harris was not the gunman. David Griffin did not witness the shooting, but he said he saw Harris with a gun.

■ In reviewing a criminal conviction, it is not the province of an appellate court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the finder of fact, and the verdict of the jury must be sustained if, taking the view most favorable to the State, there is sufficient

evidence to support it. *State v. Thompson, supra.*

We find that the evidence is sufficient to support the jury's verdict. However, we are required to determine whether the court abused its discretion in failing to grant Harris a new trial on the basis of newly discovered evidence material to his defense, namely Martize Williams' affidavit that he, not Harris, shot the victim.

Judicial abuse of discretion means that the reasons or rulings of the trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in the matters submitted for disposition. *State v. Riley*, 242 Neb. 887, 497 N.W.2d 23 (1993).

There have been instances in which other parties subsequently confessed to a crime after the defendant had been convicted. However, we do not find any Nebraska cases which have addressed a situation similar to the case at bar. The closest factual situation is found in *State v. Fellman*, 236 Neb. 850, 464 N.W.2d 181 (1991). Fellman claimed that another witness who had similar charges pending against him could now be called to testify and that the witness' testimony " 'might have changed the outcome of the trial.' " *Id.* at 861, 464 N.W.2d at 189. Fellman did not offer the affidavit of the other witness, but provided his own affidavit stating that the witness had been unavailable during the trial because the witness would have invoked his Fifth Amendment right against self-incrimination. Fellman apparently made no attempt to call the witness at trial and did not know whether the witness would or would not have refused to testify.

The Supreme Court in *Fellman* found no abuse of discretion in failing to grant a new trial, because Fellman could not have known whether the other witness would have asserted his Fifth Amendment rights had he been called as a witness, nor could he have known of the probable content of the witness' testimony.

In *State v. Campbell*, 239 Neb. 14, 473 N.W.2d 420 (1991), the court noted that applications for new trial are to be entertained with reluctance and granted with caution and found no abuse of discretion in denying such a motion because the evidence in support of the motion had been forged. In *State v. Batiste*, 231 Neb. 481, 437 N.W.2d 125 (1989), the court stated

that the evidence presented on the defendant's motion for new trial was not relevant to her case and would be unlikely to change the result. The defendant also had known about the testimony prior to the trial.

In *Johnson v. State*, 486 N.W.2d 825 (Minn. App. 1992), a witness at trial asserted his Fifth Amendment privilege. Six months after trial, the defendant filed for postconviction relief based on a claim that the witness would now waive his Fifth Amendment right and would testify. The alleged new evidence was the testimony of a witness who initially refused to testify and subsequently confessed to the crime. The court held that the testimony did not qualify as newly discovered evidence under Minnesota law because the defendant knew of the witness' existence and attempted to call him at trial. A literal reading of *Johnson* does not permit a new trial if the testimony of the witness is known before trial, regardless of the fact that the witness refused to testify at trial.

However, in *Johnson*, the court also determined that the witness' testimony did not qualify as newly discovered evidence because the testimony contradicted unimpeached testimony by police officers and was corroborated only by the defendant's testimony. The witness, a friend of the defendant's, had five prior felony convictions, was currently serving a 22-month sentence, and would not serve any additional time if convicted of this offense. Based on those facts, the allegedly newly discovered evidence was found to be doubtful, and the court found no abuse of discretion in denying the motion for new trial.

Here, Harris attempted to call Martize Williams as a witness at his trial, but Williams refused to testify, and Harris was not permitted to call Williams at trial. Harris therefore could not have, with reasonable diligence, produced the evidence at trial. In support of his motion for new trial, Harris presented Williams' affidavit, in which Williams claims to have shot the victim.

Newly discovered evidence offered in support of a motion for new trial must be so potent that, by strengthening the evidence already offered, a new trial would probably result in a different verdict; the newly discovered evidence must be

relevant and credible, and not merely cumulative. *State v. Boppre*, 243 Neb. 908, 503 N.W.2d 526 (1993); *State v. Fellman, supra*; *State v. Batiste, supra*.

> In any criminal case where it shall be made to appear upon the motion of the defendant for a new trial, supported by affidavits, depositions or oral testimony, that the defendant has discovered new evidence material to his defense which he could not with reasonable diligence have discovered and produced . . . the district court may set aside such sentence and grant a new trial . . . .

Neb. Rev. Stat. § 29-2103 (Reissue 1989).

The granting of a motion for new trial depends upon the facts and circumstances of each case. Martize Williams' statement is relevant, but the affidavit is not sufficient to permit the court to determine whether the statement is credible.

At the time of Harris' trial, Martize Williams had a murder charge pending against him. He invoked the Fifth Amendment and refused to testify. The record does not relate the disposition of the murder charge, Williams' present situation, or the facts and circumstances surrounding his affidavit, except that he is incarcerated.

By affidavit, Martize Williams has admitted to committing two felony crimes—first degree assault and use of a weapon to commit a felony. The trial court must determine whether this confession was voluntarily made. See *State v. Melton*, 239 Neb. 506, 476 N.W.2d 842 (1991). The court must determine the truthfulness of the statement and validity of the evidence offered in support of the motion for a new trial. In assessing the credibility of Williams' affidavit, it would be necessary for the court to consider whether the confession was knowingly, voluntarily, and understandingly made. See *id*. Williams states only that he is currently incarcerated at the Lincoln Correctional Center, but his affidavit does not indicate that he knew the potential result or possible consequences of the confession. The record does not show that Williams was counseled or represented by an attorney as to the potential adverse consequences of such a confession, including the fact that his admission to the use of a firearm to commit a felony, a separate offense, would result in a sentence consecutive to the

assault charge. Neb. Rev. Stat. § 28-1205 (Reissue 1989). We cannot determine whether Williams knowingly, voluntarily, and understandingly made the confession.

The voluntariness of a confession is determined by considering all the circumstances. *State v. Garza*, 241 Neb. 934, 492 N.W.2d 32 (1992). Voluntariness is imposed as a constitutional prerequisite to receipt into evidence of confessions and admissions. *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992). The voluntariness of Williams' statement is required whether made to law enforcement personnel or a private citizen. See *State v. Bodtke*, 219 Neb. 504, 363 N.W.2d 917 (1985). In a criminal trial, a confession of guilt is not competent as evidence unless first shown to have been voluntarily made. *State v. Tucker*, 215 Neb. 636, 340 N.W.2d 376 (1983).

Since we cannot say that Martize Williams' statement was credible or voluntarily made, we cannot say that the trial court abused its discretion in refusing to grant Harris a new trial. The simple fact is that Williams refused to testify at Harris' first trial. There is nothing in the record to show that he would not refuse to do so at a second trial.

The judgment and sentences of the trial court are affirmed.

AFFIRMED.

HANNON, Judge, dissenting.

The record shows that the Fifth Amendment prevented the defendant from producing at trial testimony from Martize Williams that he, not the defendant, shot the victim. This confession is evidence of such a nature that if it had been presented at trial, it probably would have produced a substantially different result. Therefore, I would grant the motion for new trial.